[No. S096127. Aug. 26, 2002.]

ROBERT ZUCKERMAN, Plaintiff and Appellant, v.
STATE BOARD OF CHIROPRACTIC EXAMINERS, Defendant and
Respondent.

34

**COUNSEL**

Ronald B. Kaplan for Plaintiff and Appellant.

Catherine I. Hanson and Astrid G. Meghrigian for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Davis, Cowell & Bowe and Andrew J. Kahn for Union of American Physicians and Dentists as Amicus Curiae on behalf of Plaintiff and Appellant.

Russell Iungerich for California Academy of Attorneys for Health Care Professionals as Amicus Curiae on behalf of Plaintiff and Appellant.

Manatt, Phelps & Phillips, Ellen M. Berkowitz and Jack S. Yeh for California Chiropractic Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, Antonio J. Merino and Zaven V. Sinanian, Deputy Attorneys General, for Defendant and Respondent.

Bill Lockyer, Attorney General, Carlos Ramirez, Assistant Attorney General, and Joseph P. Furman, Deputy Attorney General, for the Medical Board of California as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**KENNARD, J.**—Under California law, the State Board of Chiropractic Examiners (Board) may discipline any chiropractor who engages in professional misconduct. A chiropractor accused of misconduct is entitled to a hearing before an administrative law judge, whose proposed decision is reviewed by the Board. A chiropractor found to have committed misconduct may be ordered to pay the "reasonable costs of investigation and prosecution of the case," including attorney fees, that the Board incurred "up to the date of the hearing . . . ." (Cal. Code Regs., tit. 16, § 317.5.)

Here, a disciplined chiropractor raises a facial challenge to this regulation. He claims the regulation violates the due process rights of chiropractors whom the Board seeks to discipline, by chilling their right to request a hearing to contest charges of misconduct. We disagree.

I

In October 1997, the Board's executive director issued an "accusation" alleging that plaintiff Robert Zuckerman, a licensed chiropractor, should be disciplined because he engaged in sexual misconduct during the treatment of two female patients and incompetently treated a third patient. The accusation gave notice that the Board would seek an order directing Zuckerman to pay its costs of investigating and prosecuting the matter.

Zuckerman requested a hearing on the allegations, asserted various defenses, and challenged the constitutionality of the regulation authorizing the Board to order him to pay the costs of investigation and prosecution. A hearing was held before an administrative law judge, who found the allegations of sexual misconduct true. The transcript of the hearing is not part of the appellate record, but it appears that the Board offered no evidence on the allegation of incompetence. The administrative law judge issued a proposed decision revoking Zuckerman's license, but staying the revocation and placing him on probation for three years, subject to various conditions, including payment of $17,500 for the Board's prehearing costs of investigation and prosecution. The Board voted *not* to adopt the proposed decision and notified the parties that it would decide the case itself, based on the record of the administrative hearing. After the parties submitted written argument, the Board issued a decision finding the allegations of misconduct true and revoking Zuckerman's license, but staying the revocation and placing him on probation for five years, subject to conditions that included 60 days of actual suspension. The Board accepted the administrative law judge's recommendation that Zuckerman be ordered to pay $17,500 for the prehearing costs of investigation and prosecution.

Zuckerman filed a petition for administrative mandate in the superior court, alleging that the Board's findings were contrary to the weight of the evidence and that the cost assessment was unconstitutional. The trial court denied the petition. Zuckerman appealed.

The Court of Appeal concluded that substantial evidence supported the superior court's decision upholding the Board's findings of misconduct. But it held that the Board's order that Zuckerman pay for the prehearing costs of investigation and prosecution violated his right to due process of law, and it directed the trial court to grant Zuckerman's petition insofar as it challenged the Board's order directing him to pay those costs.

We granted the Board's petition for review.

## II

The Board was established by the Chiropractic Initiative Act (Act), a voter initiative enacted in 1922.[1] The Board's purpose is to regulate the practice of chiropractic care in California.

Under the Act, disciplinary proceedings before the Board are governed by the California Administrative Procedures Act, which appears in section 11500 and ensuing sections of the Government Code. (Act, § 10, subd. (b).) Hearings are ordinarily held before an administrative law judge employed by the Office of Administrative Hearings. (Gov. Code, §§ 11502, 11517.) After a hearing, the administrative law judge submits a proposed decision to the Board (*id.*, § 11517, subd. (c)), which may adopt it, reduce the proposed penalty, or, as occurred in this case, reject the proposed decision and decide the case itself. If the Board chooses the latter option, it may base its decision on the record of the hearing before the administrative law judge (as occurred here) or it may take new evidence. (*Ibid.*) The Board's decisions are subject to judicial review by administrative mandamus. (Code Civ. Proc., § 1094.5.)

The Act authorizes the Board to adopt "such rules and regulations as the board may deem proper and necessary for the performance of its work, the effective enforcement and administration of [the Act], . . . and the protection of the public" (Act, § 4, subd. (b)), as well as "rules of professional conduct appropriate to the establishment and maintenance of a high standard of professional service and the protection of the public" (Act, § 10, subd. (a)). Based on its rulemaking power, the Board adopted title 16, section

---

[1]The Act is an uncodified initiative measure printed, for ease of reference, as an appendix at the end of Deering's Annotated Business and Professions Code and in West's Annotated Business and Professions Code following section 1000.

317.5 of the California Code of Regulations (regulation 317.5), the subject of Zuckerman's constitutional challenge.

In disciplinary proceedings, the Board "may request the administrative law judge to direct [a chiropractor found to have violated the Act] to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case." (Reg. 317.5, subd. (a).) These costs "shall include the amount of investigative and enforcement costs up to the date of the hearing, including, but not limited to, charges imposed by the Attorney General." (*Id.*, subd. (b).) The Board "may reduce or eliminate the cost award." (*Id.*, subd. (c).)[2]

Although regulation 317.5 applies only to the Board and not to other disciplinary bodies, similar provisions apply to proceedings before most, if not all, professional disciplinary agencies in California. For example, an almost identical provision (Bus. & Prof. Code, § 125.3) permits all disciplinary boards within the jurisdiction of the California Department of Consumer Affairs (including most professional and vocational licensing boards) to recover prehearing investigation and enforcement costs. (Recently, the Legislature amended § 125.3 to include disciplinary hearings before the Board, but this amendment (Stats. 2001, ch. 728, § 1) did not become effective until after the proceedings at issue here.) Other similar provisions include Business and Professions Code sections 6086.10 (disciplined attorneys may be ordered to pay investigation and other costs), 2497.5 (disciplined podiatrists may be ordered to pay costs of investigation and prosecution), 2661.5 (disciplined physical therapists may be ordered to pay costs of investigation and prosecution), 4959 (disciplined acupuncturists may be ordered to pay costs of investigation and prosecution), and 7403, subdivision (b) (disciplined barbers and cosmetologists may be ordered to pay investigation costs).

### III

■ Zuckerman argues that regulation 317.5 is facially unconstitutional. He claims it violates his due process rights by discouraging chiropractors whom the Board has accused of misconduct from requesting a hearing on the charges. ■ We evaluate the merits of a facial challenge by considering

---

[2]Subdivision (f) of regulation 317.5 provides that the Board "shall not renew or reinstate any license" of a chiropractor who has failed to pay costs assessed by the Board, except that it may, on a showing of financial hardship, conditionally renew or reinstate the license if the chiropractor "demonstrates financial hardship and . . . enters into a formal agreement . . . to reimburse the board within that one-year period for the unpaid costs." This provision does not apply to Zuckerman, because the Board's decision states that his probationary period will be automatically extended until the costs are paid in full. Thus, the constitutionality of this subdivision is not at issue here, and we express no views on the matter.

"only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) A plaintiff challenging the facial validity of a statute "cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215].) The precise standard governing facial challenges "has been a subject of controversy within this court." (*Kassler v. Lockyer* (2000) 23 Cal.4th 472, 502 [97 Cal.Rptr.2d 334, 2 P.3d 581]; see also *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 673 [117 Cal.Rptr.2d 269, 41 P.3d 87]; *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 342-343 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.); *id.* at p. 421 (dis. opn. of Brown, J.); *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 345, 347 [84 Cal.Rptr.2d 425, 975 P.2d 622] (*CTA*); *id.* at pp. 358-359 (dis. opn. of Werdegar, J.); *Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084; *Pacific Legal Foundation v. Brown, supra,* 29 Cal.3d at p. 181.) We need not resolve this controversy here, however, because the result would be the same under any of the tests mentioned in these cases.

 "The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection" (*Emslie v. State Bar* (1974) 11 Cal.3d 210, 226 [113 Cal.Rptr. 175, 520 P.2d 991]), including a disciplinary hearing consistent with the requirements of due process (*Conway v. State Bar* (1989) 47 Cal.3d 1107, 1113 [255 Cal.Rptr. 390, 767 P.2d 657, 80 A.L.R.4th 101]). At issue here is whether regulation 317.5 violates those requirements by impairing the right of a licensee subject to discipline by the Board to obtain a hearing.

The parties agree the case most closely on point is our recent decision in *CTA, supra,* 20 Cal.4th 327. There, a public school district dismissed a teacher for misconduct, and the dismissal was upheld by the adjudicator at an administrative hearing requested by the teacher. State law provided that the state could charge the teacher half the cost of the hearing, including the cost of the adjudicator. The teacher raised a facial challenge to the constitutionality of this provision.

This court held that the law requiring the teacher to pay half the cost of the adjudicator was facially invalid. Noting that " 'traditional practice provides a touchstone for constitutional analysis' " (*CTA, supra,* 20 Cal.4th at p. 333), we pointed out that requiring the teacher to share the cost of the adjudicator was "unique and virtually unprecedented" (*ibid.*) and conflicted

with "the centuries-old common law tradition" (*id.* at p. 331) that the state pays judicial salaries.

In *CTA*, the state had identified the law's purpose as "discouraging 'meritless administrative proceedings'" and "'preventing groundless challenges to disciplinary proceedings.'" (*CTA, supra,* 20 Cal.4th at p. 341.) But we found these descriptions misleading because the law required *every* suspended or dismissed teacher to share the cost of the adjudicator, regardless of "the teacher's subjective good faith belief in the merits of his or her position" or the "objective reasonableness" of that position (*id.* at p. 342). The law, we noted, required teachers to pay even when they prevailed at the hearing but a court later overturned the decision, or when the hearing resulted in a reduction in the discipline imposed. Thus, we concluded, the law's true purpose was to discourage "hearing requests in which the teacher happens not to prevail" (*id.* at p. 341), which was not a proper legislative goal.

Finally, we held in *CTA* that even if we could ignore the state's improper goal of discouraging unsuccessful hearings and instead focus on its interest in conserving public resources, to require unsuccessful teachers to pay half the cost of the adjudicator would still violate due process. In reaching this conclusion, we analyzed the law under the three-part test the United States Supreme Court, in *Mathews v. Eldridge* (1976) 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (*Mathews*), created to evaluate due process challenges to a procedural scheme. Applying this standard, we held that the state's interest in "conserving resources or discouraging hearings that happen to result in an administrative or judicial decision against a teacher" was outweighed by "the teacher's strong interest in presenting his or her side of the case and in invoking the discretion of the adjudicator [or] the public's interest in preventing erroneous or arbitrary dismissals or suspensions of teachers in our public schools." (*CTA, supra,* 20 Cal.4th at p. 357.)

Zuckerman contends that, like the law we invalidated in *CTA, supra,* 20 Cal.4th 327, regulation 317.5 violates his right to due process. As we shall explain, *CTA* is distinguishable.

The law we considered in *CTA, supra,* 20 Cal.4th 327, required the disciplined teacher to pay *hearing* costs, in particular the cost of the adjudicator. But, under regulation 317.5, those costs are paid entirely by the Board, and a disciplined chiropractor must only pay certain *prehearing* costs. Although laws requiring a disciplined professional to pay for an adjudicator are "virtually unprecedented" (*CTA, supra,* 20 Cal.4th at p. 333), an examination of laws in California and other states reveals that laws imposing prehearing costs are not unusual.

As explained earlier (see p. 38, *ante*), California law permits most agencies imposing discipline on licensed professionals to recover prehearing costs of investigation and prosecution. At least 30 other states and the territory of the United States Virgin Islands have similar provisions.[3] Also,

[3]States and territories that require payment of prehearing costs include Alaska (Alaska Stat. § 47.27.085 [investigation and prosecution costs recoverable in action to recover temporary assistance improperly provided]), Arkansas (Ark. Code Ann. § 4-88-113 [investigation and prosecution costs recoverable when state prevails in action for unlawful trade practices]), Connecticut (Conn. Gen. Stat. § 19a-343f [court may impose investigation and prosecution costs on defendant found liable for public nuisance]), Delaware (Del. Code Ann., tit. 6, § 7316 [securities commissioner may impose investigation and prosecution costs on a broker-dealer, agent, investment adviser, or investment adviser representative who engages in misconduct]), Florida (Fla. Stat. Ann. § 455.227 [professional boards and departments may assess costs, excluding attorney fees, related to investigation and prosecution for a violation of any practice act]), Georgia (Ga. Code Ann. § 26-4-28 [state pharmacy board may direct a licensee violating any drug law or rule to pay investigation and prosecution costs, not to exceed $25,000]), Idaho (Idaho Code §§ 67-2609 [bureau of occupational licenses shall formulate rules for recovery of costs incurred in investigation and prosecution of licensees], 54-2105 [board of veterinary medicine may recover costs and attorney fees incurred in investigation and prosecution of complaints]), Indiana (Ind. Code Ann. § 23-7-8-8 [court may order violators of laws regulating professional fundraisers and solicitors to pay investigation and prosecution costs]), Iowa (Iowa Code § 535B.13 [attorney general may recover investigation and prosecution costs, including attorney fees, in actions to enforce rules governing mortgage bankers and brokers]), Kentucky (Ky. Rev. Stat. Ann. § 315.191 [board of pharmacists and pharmacies may order licensee, permit holder or certificate holder found guilty of a charge involving pharmacy or drug laws, rules or administrative regulations to pay investigation and prosecution costs, not to exceed $25,000]), Louisiana (La. Rev. Stat. Ann. § 37:1241 [disciplined pharmacist may be required to pay costs incurred in connection with the proceedings, including investigation and attorney fees]), Minnesota (Minn. Stat. § 325F.24 [attorney general may recover attorney fees and investigation costs from violators of laws governing building insulation]), Mississippi (Miss. Code Ann. § 73-31-21 [disciplined psychologist may be required to pay investigation and prosecution costs]), Missouri (Mo. Rev. Stat. § 407.130 [attorney general may recover investigation and prosecution costs in action to enforce Merchandising Practices Act]), Nevada (Nev. Rev. Stat. § 623.270 [disciplined architect, interior designer or residential designer may be required to pay investigation and prosecution costs]), New Hampshire (N.H. Supreme Ct. Rules, rule 37 [disciplined attorney may be required to pay investigation and enforcement costs]), New Jersey (N.J. Stat. Ann. § 17:22D-5 [insurance commissioner may require reimbursement of investigation and prosecution costs]), North Carolina (N.C. Admin. Code, tit. 21, § 66.0601 [violator of Veterinary Practice Act or Administrative Rules of the Veterinary Medical Board may be required to pay investigation and prosecution costs]), North Dakota (N.D. Cent. Code § 43-17-31.1 [disciplined physician may be required to pay investigation and prosecution costs, including attorney fees]), Ohio (Ohio Rev. Code Ann. § 4734.49 [if permanent injunction granted against a chiropractor for unlicensed practice, the court may award the party that brought the action up to $5,000 to cover attorney fees and investigation and prosecution costs]), Oregon (Or. Rev. Stat. § 618.506 [if state prevails in action to enjoin security seal violations, defendant may be required to pay investigation, preparation, and prosecution costs]), Pennsylvania (Pa. Rules Disciplinary Enforcement, rule 208 [disciplined attorney may be required to pay investigation and prosecution costs]), South Carolina (S.C. Code Ann. §§ 40-1-170 [licensee violating applicable licensing act may be required to pay investigation and prosecution costs], 40-45-170 [disciplined physical therapist may be required to pay

federal law permits trial courts to order persons convicted of certain federal crimes to pay the costs of investigation and prosecution, although (unlike costs imposed in a professional disciplinary proceeding) these costs may also be justified as punishment. A defendant convicted of possessing certain controlled substances "shall be fined the reasonable costs of the investigation and prosecution of the offense," so long as the trial court finds that the defendant has the ability to pay the fine. (21 U.S.C. § 844(a).) Similarly, title 28, section 1918 of the United States Code provides: "Whenever any conviction for any offense not capital is obtained in a district court, the court may order that the defendant pay the costs of prosecution."

Thus, in contrast to the law at issue in *CTA, supra*, 20 Cal.4th 327, requiring the litigant to pay the cost of the adjudicator, laws that, like regulation 317.5, permit governmental entities to recover prehearing costs of investigation and prosecution are common in California and throughout the country.

Equally important, the *purpose* of regulation 317.5, unlike the law we invalidated in *CTA, supra*, 20 Cal.4th 327, is constitutionally permissible. We find nothing in the history of the Act, or in the administrative history of regulation 317.5, to suggest that regulation 317.5 was enacted to "discourage hearing requests in which the [litigant] happens not to prevail," the purpose we held impermissible in *CTA, supra*, 20 Cal.4th at page 341. Here, the Board maintains that regulation 317.5 is intended to reduce its operating costs by requiring chiropractors who engage in acts of misconduct or incompetence to pay for the prehearing costs the Board incurs in investigating and prosecuting them, up to the time of trial. By reducing these costs, the Board explains, it can better achieve its statutorily mandated purpose of protecting the public from incompetent and dishonest chiropractors. The United States Supreme Court has held that the public's interest in "conserving scarce fiscal and administrative resources" is a legitimate goal. (*Mathews, supra*, 424 U.S. at p. 348 [96 S.Ct. at p. 909].) Thus, regulation

investigation and prosecution costs]), South Dakota (S.D. Codified Laws § 16-19-70.1 [disciplined attorney may be required to pay investigation and prosecution costs]), Tennessee (Tenn. Comp. R. & Regs. § 0260-2-.15 [disciplined chiropractor may be required to pay investigation and prosecution costs]), Texas (25 Tex. Admin. Code § 117.86 [health department may assess investigation and prosecution costs, including attorney fees]), Vermont (Vt. Stat. Ann., tit. 8 § 2548 [commissioner of banking, insurance, securities, and health care administration may assess investigation and prosecution costs, including attorney fees, against disciplined licensees providing financial services]), West Virginia (W.Va. Code § 32-4-407, subd. (a) [violator of Uniform Securities Act must pay investigation and prosecution costs, including "salaries . . . paid to . . . legal personnel"]), Wisconsin (Wis. Stat. § 281.98 [violator of water and sewage regulations may be required to pay investigation and prosecution costs]), and the Virgin Islands (U.S. V.I. Terr. Ct. Rules, pt. IX, rule 303 [disciplined attorney may be required to pay investigation and prosecution costs]).

317.5 serves " 'a proper legislative goal' " that has " 'a real and substantial relation to the object to be attained.' " (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300].)

Zuckerman contends that even if the Board's purpose of reducing its prehearing costs of investigation and prosecution is constitutionally permissible, regulation 317.5 is an impermissible means of achieving that goal, because it violates due process by discouraging chiropractors facing allegations of misconduct from exercising their right to a hearing to contest those allegations. ■ To resolve this issue we apply the test the high court articulated in *Mathews, supra*, 424 U.S. 319, for use in considering due process challenges to procedural schemes. Three factors come into play: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews, supra*, 424 U.S. at p. 335 [96 S.Ct. at p. 903].)

■ Turning to the first of these factors—the private interest affected by the official action—Zuckerman identifies the private interest at stake as the right of chiropractors to practice their profession. This is an interest of great importance. As this court has held, the holder of a professional license "has a property interest in the right to practice his profession that cannot be taken from him without due process." (*Conway v. State Bar, supra*, 47 Cal.3d at p. 1113.) A chiropractor whose license is revoked is deprived of that property interest. Even when the Board imposes a less serious form of discipline such as a short suspension accompanied by a period of probation (as occurred here), disciplinary proceedings may tarnish the chiropractor's "good name, reputation, honor, or integrity" (*CTA, supra*, 20 Cal.4th at p. 348), making it difficult or impossible for the chiropractor to find work, thereby affecting a due process liberty interest. (*In re Rose* (2000) 22 Cal.4th 430, 456 [93 Cal.Rptr.2d 298, 993 P.2d 956]; *CTA, supra*, 20 Cal.4th at p. 348.)

The second factor in the due process analysis is the risk that the challenged procedures—here the cost recoupment provision in regulation 317.5—will result in an "erroneous deprivation" (*Mathews, supra*, 424 U.S. at p. 335 [96 S.Ct. at p. 903]) of the interest at stake, that is, the chiropractor's right to practice his or her profession. Zuckerman argues that regulation 317.5 will, by discouraging chiropractors charged with disciplinary violations from seeking a hearing to contest the charges, lead to such erroneous deprivations.

Regulation 317.5 does not discourage chiropractors from seeking a hearing insofar as it requires them to pay investigation and prosecution costs the Board incurs *before* it files formal charges, for a chiropractor who admits the charges and does not request a hearing also must pay those costs. But, as explained below, regulation 317.5's further requirement that disciplined chiropractors must pay costs the Board incurs *after* charges are filed poses a greater risk of causing erroneous deprivations of the right to practice.

For example, a chiropractor who is *innocent* of alleged misconduct, but who has limited financial resources, might not request a hearing for fear that the Board will erroneously sustain the charge and order the chiropractor to reimburse its costs, thereby imposing an additional financial burden. Also, a chiropractor accused of several acts of misconduct, *some* of which are untrue, might decide not to contest the charges for fear of being charged for the costs of investigation and prosecution even if even *one* of the charges is found true. Moreover, in some cases the Board may seek a severe penalty such as license revocation, but mitigating evidence at a hearing would show that a milder penalty, such as a license suspension, is more appropriate. A chiropractor might decide not to request a hearing at which to present such mitigating evidence for fear of having to pay the added costs of investigation and prosecution.

These concerns are not insubstantial. But, as we shall explain, an important distinction between regulation 317.5 and the law we invalidated in *CTA* minimizes the risk that regulation 317.5 will deter chiropractors with potentially meritorious claims from requesting a disciplinary hearing. At issue in *CTA* was a *mandatory* provision that imposed hearing costs "upon *all* teachers who ultimately prove unsuccessful at any step in the proceedings . . . ." (*CTA, supra*, 20 Cal.4th at p. 342, fn. 8, italics added.) Regulation 317.5, by contrast, is merely *discretionary*, because the administrative law judge must determine whether the Board's costs are "reasonable," and the Board may "reduce or eliminate" the administrative law judge's cost award. (Reg. 317.5, subd. (c).)

In *CTA*, we noted the critical importance of granting disciplinary bodies the discretion not to impose costs. The dissent in that case mentioned several laws permitting disciplined professionals to be charged for the costs of investigation and prosecution, arguing that these provisions were similar to subdivision (e) of Education Code section 44944, the law at issue in *CTA*. (*CTA, supra*, 20 Cal.4th at p. 360 (dis. opn. of Werdegar, J.).) The majority responded that those cost recoupment provisions "do not share the same serious constitutional deficiencies" as Education Code section 44944, subdivision (e), because under those provisions, "disciplined licensees *may* be

required to pay costs" (*CTA, supra*, 20 Cal.4th at p. 337, fn. 3), but payment of costs is not *mandatory*.

 The Board must exercise its discretion to reduce or eliminate cost awards in a manner that will ensure that regulation 317.5 does not deter chiropractors with potentially meritorious claims or defenses from exercising their right to a hearing. Thus, the Board must not assess the full costs of investigation and prosecution when to do so will unfairly penalize a chiropractor who has committed some misconduct, but who has used the hearing process to obtain dismissal of other charges or a reduction in the severity of the discipline imposed. The Board must consider the chiropractor's "subjective good faith belief in the merits of his or her position" (*CTA, supra*, 20 Cal.4th at p. 342) and whether the chiropractor has raised a "colorable challenge" to the proposed discipline (*id.* at p. 345). Furthermore, as in cost recoupment schemes in which the government seeks to recover from criminal defendants the cost of their state-provided legal representation (see *Fuller v. Oregon* (1974) 417 U.S. 40, 53 & fn. 12 [94 S.Ct. 2116, 2124-2125, 40 L.Ed.2d 642]), the Board must determine that the chiropractor will be financially able to make later payments. Finally, the Board may not assess the full costs of investigation and prosecution when it has conducted a disproportionately large investigation to prove that a chiropractor engaged in relatively innocuous misconduct.[4]

A disciplined chiropractor may obtain judicial review of the Board's application of the factors discussed above by filing a petition for administrative mandate in the superior court. There, the superior court may overturn the Board's cost award if it finds, in the exercise of its independent judgment, that the Board's cost award is not supported by the weight of the evidence. (See *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789 [72 Cal.Rptr.2d 624, 952 P.2d 641].) Moreover, if the Board fails to properly exercise its discretion to limit cost assessments, its decisions may also be vulnerable to constitutional attack on the ground that, as *applied*, regulation 317.5 unconstitutionally chills the right of chiropractors to seek a hearing.

 Thus regulation 317.5, by granting the Board discretion not to assess the full amount of its costs, and by subjecting the Board's cost determination to judicial review, greatly limits the likelihood that cost assessments will lead to an "erroneous deprivation" (*Mathews, supra*, 424 U.S. at p. 335 [96 S.Ct. at p. 903]) of the right of disciplined chiropractors to practice their profession.

---

[4]In her concurring opinion, Justice Brown bitterly complains that the factors we articulate here to guide the Board's discretion are "miserably inexact," but she fails to suggest a more happily precise set of factors.

The third and final factor we consider in our due process analysis is the public interest in regulation 317.5. The Board notes that its interest is to protect the public against chiropractors who engage in misconduct, pointing out that if it cannot recoup the cost of investigating and prosecuting those who engage in such misconduct, its ability to pursue allegations of misconduct will be seriously impaired. Furthermore, as previously explained (see p. 38, *ante*), an almost identical provision (Bus. & Prof. Code, § 125.3) permits all disciplinary boards within the jurisdiction of the California Department of Consumer Affairs (including most professional and vocational licensing boards) to recover prehearing investigation and enforcement costs. If regulation 317.5 violated due process, Business and Professions Code section 125.3 could also be unconstitutional (unless its language could somehow be distinguished) and none of the disciplinary boards covered by section 125.3 would be able to recover their costs of investigation and prosecution. This would place a substantial burden on the state's financial resources.

In *Mathews*, the United States Supreme Court discussed how financial cost (one of the chief purposes of reg. 317.5) should be weighed against an individual's interests in a fair hearing. The high court explained: "Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision. But the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed." (*Mathews, supra,* 424 U.S. at p. 348 [96 S.Ct. at p. 909].) To conduct that weighing process, the court stated, "[a]ll that is necessary is that the procedures be tailored . . . to 'the capacities and circumstances of those who are to be heard,' [citation] to insure that they are given a meaningful opportunity to present their case." (*Id.* at p. 349 [96 S.Ct. at p. 909].) In evaluating what process is due, the high court gave "substantial weight" to the "good-faith judgments" of the officials charged with the administration of the procedures in question. (*Ibid.*) Here, regulation 317.5 gives chiropractors charged in disciplinary proceedings a "meaningful opportunity to present their case" (*Mathews, supra,* at p. 349 [96 S.Ct. at p. 909]), so long as the Board exercises its discretion to impose only those investigation and prosecution costs that will not chill their right to seek a hearing. Due process requires no more.

Thus, we hold that regulation 317.5 does not "inevitably pose a present total and fatal conflict with applicable constitutional prohibitions" (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181 [172 Cal.Rptr. 487, 624 P.2d 1215]), nor does it violate due process in "the *generality* or *great majority* of cases" (*San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th at p. 673; see also *Kasler v. Lockyer, supra,* 23 Cal.4th at p. 502). It is therefore not facially unconstitutional.

Lending support to that conclusion are the decisions of the federal courts unanimously holding that federal laws requiring defendants in criminal cases to pay for the costs of investigation and prosecution do not violate the due process clause. (*United States v. Palmer* (11th Cir. 1987) 809 F.2d 1504, 1505-1507; *United States v. Wyman* (8th Cir. 1984) 724 F.2d 684, 688-689; *United States v. Chavez* (9th Cir. 1980) 627 F.2d 953, 955-958; *United States v. Glover* (2d Cir. 1978) 588 F.2d 876, 878-879; *United States v. American Theater Corp.* (8th Cir. 1975) 526 F.2d 48, 50-51.) Some of these decisions have expressed concern that serious constitutional problems would arise if a cost recoupment law was made mandatory in every case. (See *United States v. Glover, supra*, 588 F.2d at p. 878; *United States v. American Theater Corp., supra*, 526 F.2d at p. 51; but see *United States v. Chavez, supra*, 627 F.2d at p. 957.) We share these concerns. But as we have explained, regulation 317.5, the cost recoupment law at issue here, grants the Board discretion to reduce or eliminate the costs that a disciplined chiropractor may be required to pay.

In support of its holding that regulation 317.5 violates due process, the Court of Appeal pointed out that the regulation is not reciprocal, because it requires a disciplined chiropractor to pay for the state's investigation and prosecution costs (including attorney fees) if the chiropractor is unsuccessful at the disciplinary hearing, but it does not require the state to pay for the chiropractor's attorney fees if the state is unsuccessful at the hearing.[5] Reciprocal rules for cost recoupment, however, are not required by due process. To require the Board to reimburse chiropractors who prevail at disciplinary hearings for their costs would impair the Board's ability to protect the public from chiropractors who injure the public through their incompetence and misconduct.

Zuckerman also argues that the Board's enabling legislation does not authorize regulation 317.5, and that the regulation therefore exceeds the Board's jurisdiction. The Court of Appeal summarily rejected the claim, relying on *Oranen v. State Board of Chiropractic Examiners* (1999) 77 Cal.App.4th 258, 261-263 [90 Cal.Rptr.2d 287], which held that regulation 317.5 is authorized by sections 4 and 10 of the Act. We do not address this issue because it is not within the scope of our order granting the Board's petition for review.

---

[5]Government Code section 800 provides that the trial court may, in a civil action to review the award in an administrative proceeding, order the administrative agency to pay the plaintiff's costs if it finds that the decision in the administrative proceeding was "arbitrary or capricious," but the maximum amount the court can award is $7,500. This section does not provide a remedy that is reciprocal to regulation 317.5 because of the $7,500 cap and the requirement that the agency act arbitrarily or capriciously, neither of which appears in regulation 317.5.

DISPOSITION

The judgment of the Court of Appeal is reversed to the extent that it held regulation 317.5 invalid. The Court of Appeal is directed to affirm the judgment of the trial court, which denied plaintiff Zuckerman's petition for administrative mandamus.

George, C. J., Baxter, J., and Moreno, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree that California Code of Regulations, title 16, section 317.5 (regulation 317.5) does not, on its face, violate the due process rights of chiropractors by chilling exercise of their hearing rights.

Under the compulsion of *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327 [84 Cal.Rptr.2d 425, 975 P.2d 622] (*CTA*), from which I dissented, I also agree that the various restrictions imposed today on the discretion of administrative agencies to assess costs (maj. opn., *ante*, at p. 45) are constitutionally necessary. But were it not for the authority of *CTA*, that the absence of any of the court's new restrictions would render a cost regulation facially invalid would be unclear, to say the least. Suppose, for example, that the State Board of Chiropractic Examiners were *not* required to consider, in imposing investigative costs on a disciplined chiropractor, whether the chiropractor had subjectively believed in the merits of his or her defense to the charges (maj. opn., *ante*, at p. 45): would that render the regulation *facially* invalid? I doubt it, for in order to establish facial invalidity the plaintiff must show that the regulation will deter the exercise of hearing rights in every case, or at least in the generality of cases. (*CTA, supra,* 20 Cal.4th at p. 359 (dis. opn. of Werdegar, J.).) Since many chiropractors with a subjective belief in the merits of their position would presumably also have some degree of confidence that their position will prevail in the administrative hearing, that all or the great majority of such professionals would give up their hearing rights because of a possible cost assessment should they lose the hearing, were there no guarantee their subjective belief would be considered, seems doubtful. (See *id.* at pp. 359, 367-369.) Nonetheless, I agree *CTA* compels this conclusion and demands adherence as a matter of stare decisis.[1]

At the same time, one must note in the court's approach to constitutional adjudication a significant divergence between the present decision and *CTA.*

---

[1]In the present case, I note, the investigative costs imposed amounted to $17,500, whereas in *CTA* the adjudicative costs imposed were less than $7,750. (*CTA, supra,* 20 Cal.4th at p. 332.) That the *CTA* provision nevertheless would serve as the greater deterrent to a litigant, as the majority in that case held, seems problematic.

In the present case, the court accepts the agency's assertion that regulation 317.5's purpose is "to reduce its operating costs by requiring chiropractors who engage in acts of misconduct or incompetence to pay for the prehearing costs . . . ." (Maj. opn., *ante*, at p. 42.) In *CTA*, the state's asserted purpose, similarly, was " 'to promote accurate administrative outcomes without undue taxpayer expense.' " (*CTA, supra,* 20 Cal.4th at p. 359 (dis. opn. of Werdegar, J.), quoting the state's attorney at oral argument.) But there, as I explained in dissent, "[b]ecause the statute is not limited to frivolous hearing demands, the majority rejects the state's asserted purpose out of hand and posits a different, obviously indefensible purpose: to deter all unsuccessful teacher requests, meritless or not." (*Ibid.*) As in *CTA*, here too, under the regulation as written, costs may be imposed regardless of whether the chiropractor had a potentially meritorious defense to the charges. Yet the majority here accepts the rationale it dismissed in *CTA*. I join because I think the *CTA* majority was in error and today's approach is the correct one. (See *id.* at pp. 359-360.)

Chin, J., concurred.

**BROWN, J.,** Concurring.—In this case we consider a facial challenge to section 317.5 of title 16 of the California Code of Regulations (section 317.5), which authorizes the State Board of Chiropractic Examiners (Board) to require a disciplined chiropractor to reimburse the Board for the reasonable costs of investigation and enforcement. As the majority acknowledges, section 317.5 is similar to other provisions that apply to proceedings before most, if not all, professional disciplinary agencies in California. (See maj. opn., *ante*, at p. 38.)

Section 317.5 and similar provisions are based on a simple premise. Incentives matter. Free or undervalued goods are overused. Thus, the creation of disincentives to discourage the overuse of public goods is both an equitable necessity and an economic imperative. Legislative bodies at all levels of government have implemented fee- and cost-shifting schemes that require litigants to decide whether their claim is worth pursuing. (See *Abdul-Akbar v. McKelvie* (3d Cir. 2001) 239 F.3d 307, 318; *Flint v. Haynes* (4th Cir. 1981) 651 F.2d 970, 973.) Such schemes are generally uncontroversial unless they effectively deny access to indigents (*Boddie v. Connecticut* (1971) 401 U.S. 371, 380-381 [91 S.Ct. 780, 787-788, 28 L.Ed.2d 113]; *Lindsey v. Normet* (1972) 405 U.S. 56, 78-79 [92 S.Ct. 862, 876-877, 31 L.Ed.2d 36]), or are so confiscatory, ruinous or otherwise prohibitive that they deny due process (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 363 [84 Cal.Rptr.2d 425, 975 P.2d 622] (dis. opn. of Werdegar, J.) (*CTA*)).

If that were still the law in California, Mr. Zuckerman would have no argument here. The question concerning the constitutionality of section 317.5 arises as a result of this court's decision in *CTA*, *supra*, 20 Cal.4th 327, in which a majority of this court held such disincentives to be unconstitutional. Reaching that conclusion required considerable effort. Ordinarily, we evaluate the merits of a facial challenge by considering only the text of the measure itself, not its application to the particular circumstances of an individual. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) " 'To support a determination of facial unconstitutionality, voiding the statute as a whole, [plaintiffs] cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, [plaintiffs] must demonstrate that the act's provisions inevitably pose a present *total and fatal* conflict with the applicable constitutional prohibitions.' " (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 421 [66 Cal.Rptr.2d 210, 940 P.2d 797] (dis. opn. of Brown, J.), quoting *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180-181 [172 Cal.Rptr. 487, 624 P.2d 1215]; *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 60-61 [51 Cal.Rptr.2d 837, 913 P.2d 1046]; *Tobe v. City of Santa Ana*, at p. 1084; *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 267 [5 Cal.Rptr.2d 545, 825 P.2d 438].)

While purporting to apply that stringent standard, the majority in *CTA* sustained a facial challenge to an Education Code section that permitted the state to charge half the cost of a hearing, including the cost of the adjudicator, to a dismissed teacher who demanded the hearing, if the dismissal is ultimately upheld. This court found the provision facially invalid despite the fact that the teacher had a full hearing. The plaintiff could not show a total and fatal conflict with his right to due process because he had been deprived of nothing to which he was constitutionally entitled. He simply decided he did not wish to pay half the cost of the hearing after his dismissal was upheld. Nevertheless, the court invalidated the statute because it created "an incentive to pursue only cost-effective strategies and tactics" (*CTA*, *supra*, 20 Cal.4th 237, 359 (dis. opn. of Werdegar, J.)), and that, in the majority's view, impermissibly discouraged ultimately unsuccessful efforts. To put it another way, this court held that a litigant who defends against a threatened infringement by the state of a constitutionally protected interest is entitled, as a function of due process, to have the taxpayers foot the entire bill, even in a losing cause.

I did not agree with the *CTA* decision in 1999; I do not agree with it now. But Mr. Zuckerman's logic in relying on it cannot be faulted. Although section 317.5 is a reimbursement statute that applies regardless of whether

the disciplined chiropractor requests a hearing, its provision that the disciplined chiropractor may be required to pay costs after charges are filed creates the same kind of disincentive this court rejected in *CTA*. In this case, however, the majority does not find the regulation facially invalid. I agree. The court does not stop there, however; it engrafts a raft of *CTA*-inspired "requirements" that effectively eviscerate the regulation. Having used *CTA* to turn the due process requirement upside down, the court now uses this case to turn the standard for determining facial validity inside out. Litigants challenging the facial validity of a statute will no longer be required to show that a provision is unconstitutional under any and all circumstances. Instead, the government will be required to show that no conceivable application could lead to an unconstitutional result.

Moreover, the subjective, amorphous, and miserably inexact standards the court imposes on this Board (see maj. opn., *ante*, at p. 45), and that will presumably apply to all similar provisions, will no doubt lead to interminable litigation over the accuracy of the Board's assessment. Terms like "potentially meritorious," "subjective good faith" and "colorable challenge," not to mention "relatively innocuous misconduct," are notoriously difficult concepts on which to get a firm grasp. Indeed, in *CTA*, this court rejected the argument that constitutional infirmities in Education Code section 44944, subdivision (e) should be challenged on a case-by-case basis because an assessment of the probable merit of the teacher's position would be a virtual impossibility. (*CTA, supra*, 20 Cal.4th at p. 350.) We now issue an open invitation to endless litigation, which will necessarily overwhelm any benefit to be gained from section 317.5's disincentive—what's left of it.

Let us not be coy. Disincentives have a *chilling* effect. That is their purpose. However, creating economic disincentives to ration a scarce public resource like the administrative review process is not necessarily the same as impermissibly chilling the exercise of a constitutional right. (See, e.g., *Jenkins v. Anderson* (1980) 447 U.S. 231, 236 [100 S.Ct. 2124, 2128, 65 L.Ed.2d 86] [the Constitution does not forbid " 'every government-imposed choice . . . that has the effect of discouraging the exercise of constitutional rights' "]; see *Corbitt v. New Jersey* (1978) 439 U.S. 212, 218 [99 S.Ct. 492, 497, 58 L.Ed.2d 466]; *In re Green* (D.C. Cir. 1981) 669 F.2d 779, 786; *People v. Amor* (1974) 12 Cal.3d 20, 28 [114 Cal.Rptr. 765, 523 P.2d 1173].)

In *CTA,* a teacher whose dismissal was upheld at an administrative hearing requested by the teacher was asked to pay half the cost of the hearing. The purpose of the law was to " 'discourag[e] meritless administrative proceedings' " and " 'prevent[] groundless challenges to disciplinary proceedings.' " (*CTA, supra*, 20 Cal.4th at p. 341.) To my mind, that purpose was not only

unobjectionable, but entirely laudable. And a statute need not operate perfectly to pass constitutional muster, particularly a facial challenge. (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 502 [97 Cal.Rptr.2d 334, 2 P.3d 581].) Constitutional constraints require neither a perfect nor a best available fit between a statute's goals and the means employed in that statute to further that goal. (*Abdul-Akbar v. McKelvie, supra*, 239 F.3d at p. 319.)

The state fisc is limited; the demands on it are limitless. In 1999, I was not prepared to say that providing free administrative appeals to teachers with groundless claims was more important than, for example, providing smaller classes for elementary school students or repairing aging school facilities. Today, I am not prepared to say that the profligate waste of time, energy, and judicial talent pursuing the majority's ideal of the perfectly calibrated administrative response is mandated in every case by the due process clause. Due process does not mean perfect process; it means reasonable process.

Because I believe *CTA* was wrongly decided and this case just compounds the problem, I concur only in the result.