[No. B188049. Second Dist., Div. Five. Oct. 26, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER McCRAY, Defendant and Appellant.

## COUNSEL

William Flenniken, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Deborah J. Chuang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—A jury convicted defendant Christopher McCray of selling or transporting a controlled substance in violation of Health and Safety Code section 11352, subdivision (a). Defendant admitted suffering one prior serious or violent felony conviction within the meaning of the "Three Strikes" law, as well as serving five prior prison terms within the meaning of Penal Code section 667.5, subdivision (b), and four prior convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a). Defendant was

sentenced to a total of nine years in state prison, consisting of the middle term of four years for the commitment offense, doubled under Penal Code section 1170.12, subdivision (c)(1) of the Three Strikes law, plus one year for a prior prison term enhancement (Pen. Code, § 667.5, subd. (b)). The trial court imposed and stayed the three-year enhancements for the Health and Safety Code prior convictions, as well as the balance of the one- year prior prison term enhancements under the Penal Code.[1] Most significantly for this appeal, the trial court ordered defendant to provide DNA specimens and samples pursuant to Penal Code section 296.

In his timely appeal, defendant presents a very narrow facial challenge to the constitutionality of the DNA and Forensic Identification Database and Data Bank Act of 1998 (DNA Act), as amended by Proposition 69 on November 3, 2004. (Pen. Code, § 295 et seq.) Defendant contends that the provision authorizing the California Department of Justice to share its DNA database with foreign law enforcement agencies is overbroad in violation of due process and his state and federal constitutional rights to privacy. As a remedy, defendant argues that the portion of the DNA Act "relating to international dissemination of California's database can be excised" from the balance of the statute.

As we explain, defendant forfeited his challenge when he failed to raise it below. In addition, defendant is seeking relief against an entity—the California Department of Justice—that is not a party to this appeal. Finally, we hold defendant's argument fails on its merits. We therefore affirm the judgment, but remand the matter to the trial court for sentencing proceedings on the prior prison term and prior narcotics conviction enhancements, which were improperly stayed.

## STATEMENT OF FACTS

As defendant does not challenge his conviction or dispute any of the evidence presented at trial, only a brief summary of the underlying facts is necessary. On January 13, 2005, a police officer observed defendant sell two pieces of cocaine base to another person. No defense testimony was presented.

---

[1] This court solicited letter briefing from the parties on the issue of whether the trial court exceeded its jurisdiction by imposing, but staying, the enhancements. In part II of this opinion, we conclude the trial court did exceed its authority and remand the matter to the trial court for further proceedings on the enhancements.

## DISCUSSION

## I

## DNA TESTING

Defendant contends the DNA Act is unconstitutional on its face because Penal Code section 295, subdivision (g), purportedly authorizes the wholesale exportation of the information in California's DNA database to foreign countries. According to defendant, that provision is overbroad in violation of his federal and state constitutional due process rights because it unduly impinges upon his state constitutional right to privacy (Cal. Const., art. I, § 1) and his federal constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment. Defendant concedes, however, he failed to object to the trial court's DNA order on any ground. As we have made clear, "The California Supreme Court has repeatedly held that constitutional objections must be interposed in order to preserve such contentions on appeal." (*In re Josue S.* (1999) 72 Cal.App.4th 168, 170 [84 Cal.Rptr.2d 796], citing inter alia, *People v. Williams* (1997) 16 Cal.4th 153, 250 [66 Cal.Rptr.2d 123, 940 P.2d 710].) The factual and legal predicates to defendant's constitutional challenge were available when the trial court imposed the order defendant attempts to assail for the first time on appeal, and no justification is offered for failing to interpose a timely and specific objection below.

Defendant attempts to avoid application of the general forfeiture rule by asserting that the challenged order was an "unauthorized sentence." (See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [appellate court may consider issue of an unauthorized sentence even in the absence of an objection in the trial court where the sentence could not be imposed under any circumstance in the case].) However, that exception does not apply because the DNA order was not a punishment. As the Attorney General points out, our Supreme Court has applied the general forfeiture rule under the analogous circumstance of a claim that the trial court improperly ordered HIV blood testing under Penal Code section 1202.1: "Since HIV testing does not constitute punishment [citation], it cannot properly be considered a sentencing choice. While the order is made at the time sentence is imposed, the Legislature enacted [Penal Code] section 1202.1 and related HIV testing statutes as health and safety measures to combat the spread of AIDS, not to increase criminal penalties. [Citations.] Instead, we conclude that the general forfeiture rationale applies . . . ." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1113 [6 Cal.Rptr.3d 723, 79 P.3d 1030].) The DNA Act's requirement that convicted felons provide DNA samples was not intended as punishment. Rather, it was enacted as a law enforcement tool for the purpose of "assist[ing] federal, state, and local criminal justice and law enforcement

agencies within and outside California in the expeditious and accurate detection and prosecution of individuals responsible for sex offenses and other crimes, the exclusion of suspects who are being investigated for these crimes, and the identification of missing and unidentified persons, particularly abducted children." (Pen. Code, § 295, subd. (c).) Accordingly, we find defendant failed to preserve his contention for appeal.

A second flaw in defendant's argument is illustrated in *People v. Dial* (2005) 130 Cal.App.4th 657 [30 Cal.Rptr.3d 252], in which Dial argued his Fourth Amendment rights were violated when the trial court ordered that he comply with the DNA Act. Dial urged on appeal that the order be " 're-scinded.' " (130 Cal.App.4th at p. 661.) Our colleagues in the First Appellate District held that Dial's contention was not cognizable on appeal because (1) the party primarily responsible for collecting and maintaining the DNA sample, the California Department of Justice, was not a party to the criminal trial or appeal, and thus did not have an opportunity to protect its interests, and (2) compliance with the DNA Act is required by law even in the absence of an order from the trial court, and no relief from the statutory requirement could be awarded on direct appeal. (130 Cal.App.4th at pp. 661–662.)

Defendant's argument on the merits differs from that in *Dial*, but the procedural impediment is the same. Defendant is seeking to prohibit the California Department of Justice from international disclosure of defendant's DNA sample. However, the Department of Justice is not a party to this appeal and cannot be enjoined from acting in this manner urged by defendant. The relief sought by defendant in this direct appeal is not available. (*People v. Dial, supra,* 130 Cal.App.4th at p. 662.)

In any event, we have discretion to consider points not raised at trial "when a contention newly made on appeal presents a question of law based upon undisputed facts [citation]." (*Raphael v. Bloomfield* (2003) 113 Cal.App.4th 617, 621 [6 Cal.Rptr.3d 583]; see *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 [115 Cal.Rptr.2d 3].) Therefore, as an alternative basis for our holding, we address the merits of defendant's constitutional challenge. At the outset, we note that defendant's claim is very narrow. He does not challenge the constitutionality of the requirement that convicted felons provide DNA samples. Nor does he "challenge the practice of providing a few DNA profiles to foreign law enforcement agencies on a case-by-case basis." Rather, he "challenges the provision of transferring California's entire DNA database to any 'international' entity." This claim fails for a variety of reasons, not the least of which being that the DNA Act does not provide for such wholesale database exportation.

■ "We evaluate the merits of a facial challenge by considering 'only the text of the measure itself, not its application to the particular circumstances of an individual.' [Citation.] A plaintiff challenging the facial validity of a statute 'cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute.' (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215].)" (*Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 38–39 [124 Cal.Rptr.2d 701, 53 P.3d 119].) Rather, "[t]he beginning premise of any determination regarding the constitutionality of a statute is an assumption of its validity. ' "[W]e resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.]" ' [Citation.] A facial challenge to a statute's constitutionality requires a demonstration the provisions of the statute, despite careful interpretation, fatally collide with the Constitution. [Citation.]" (*Punsly v. Ho* (2001) 87 Cal.App.4th 1099, 1103–1104 [105 Cal.Rptr.2d 139].)

In analogous circumstances, both the California and United States Supreme Courts have three factors in considering due process challenges to procedural schemes: " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " (*Zuckerman v. State Bd. of Chiropractic Examiners, supra,* 29 Cal.4th at p. 43, quoting *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 96 S.Ct. 893].)

■ On November 3, 2004, the voters enacted Proposition 69 to broaden the scope of qualifying offenses requiring collection of DNA samples. Penal Code section 296, as amended, now provides that any person convicted of a felony and any person who is imprisoned, confined, or placed in a state correctional facility must submit a DNA sample. (See *People v. Espana* (2006) 137 Cal.App.4th 549, 551–552 [40 Cal.Rptr.3d 258].) Defendant's facial challenge focuses on Penal Code section 295, subdivision (g), which provides: "The Department of Justice, through its DNA Laboratory, shall be responsible for the management and administration of the state's DNA and Forensic Identification Database and Data Bank Program and for liaison with the Federal Bureau of Investigation (FBI) regarding the state's participation in a national *or international* DNA database and data bank program such as the FBI's Combined DNA Index System (CODIS) that allows the storage and exchange of DNA records submitted by state and local forensic DNA laboratories nationwide." (Italics added.)

Defendant asserts that the DNA Act's authorization of potential participation in *international* database and data bank programs violates his privacy rights under the federal Constitution's Fourth Amendment and article I, section 1 of the California Constitution. According to defendant, those provisions support a right to prevent his DNA profile information from leaving the United States. We are aware of no such constitutional privacy interest. To the contrary, the relevant decisional law instructs that defendant's privacy rights in this context are highly attenuated at best. As a convicted felon, defendant has a diminished expectation of privacy in his identity. (See, e.g., *People v. Johnson* (2006) 139 Cal.App.4th 1135, 1161–1164 [43 Cal.Rptr.3d 587].) "By their commissions of a crime and subsequent convictions, persons such as appellant have forfeited any legitimate expectation of privacy in their identities. In short, any argument that Fourth Amendment privacy interests do not prohibit gathering information concerning identity from the person of one who has been convicted of a serious crime, or of retaining that information for crime enforcement purposes, is an argument that long ago was resolved in favor of the government." (*People v. King* (2000) 82 Cal.App.4th 1363, 1375 [99 Cal.Rptr.2d 220] [rejecting Fourth Amendment challenge to DNA Act's requirement that convicted felon provide DNA samples]; see *People v. Adams* (2004) 115 Cal.App.4th 243, 255–259 [9 Cal.Rptr.3d 170] [same]; *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 505–512 [120 Cal.Rptr.2d 197] [same]; see also *United States v. Kincade* (9th Cir. 2004) 379 F.3d 813, 840.) Accordingly, "[t]he legitimate governmental interest in maintaining a permanent, reliable record of identification of all convicted felons remains unassailable under the current version of [Penal Code] section 296, subdivision (a)(1), and 'outweighs the minor intrusion involved' in taking prisoners' saliva or blood samples 'and storing their DNA profiles, given prisoners' reduced expectation of privacy in their identities . . . .' [Citations.]" (*People v. Travis* (2006) 139 Cal.App.4th 1271, 1289 [44 Cal.Rptr.3d 177].)

■ Moreover, defendant's underlying contention—that the DNA Act authorizes the Department of Justice to "export" California's entire DNA database to any foreign entity—fails as a matter of statutory construction. Penal Code section 295, subdivision (g) merely authorizes the Department of Justice to act as a "liaison" with the FBI should the state participate in an international DNA database and data bank program. (See *Alfaro v. Terhune, supra*, 98 Cal.App.4th at p. 508 [noting the important privacy protections built into the DNA Act].) Other sections of the DNA Act provide that the DNA profile information is confidential and "shall be released only to law enforcement agencies . . . ." (Pen. Code, § 299.5, subd. (f).) Penal Code section 295 itself makes it clear that any sharing of DNA information will be limited primarily, if not exclusively, to law enforcement agencies for the

purposes of crime detection, the exclusion of suspects under criminal investigation, and the identification of missing or unidentified persons. (Pen. Code, § 295, subd. (c).) Further, unauthorized use or disclosure of DNA database information is punishable by fines and imprisonment. (Pen. Code, § 299.5, subd. (i)(1).) "The Department of Justice must comply with the provisions of the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.) which 'requires a public agency to limit the collection and retention of personal information to that necessary to accomplish the agency's specific purpose, and restricts disclosure of such information. (Civ. Code, §§ 1798.14, 1798.24; [citation].) These provisions are relevant in determining the extent of an intrusion upon privacy interests and in balancing the intrusion against the public interests to be served. [Citation.]' [Citation.]" (*People v. Adams, supra,* 115 Cal.App.4th at p. 258.)

In short, the assertion that the DNA Act in general, and Penal Code section 295, subdivision (g) in particular, invests the Department of Justice with free reign to turn over its DNA database to any foreign entity is contrary to the statute's plain terms. Defendant's speculation that the challenged provision of the DNA Act might somehow permit a foreign entity to manipulate his genetic profile so as to frame him as a notorious international terrorist is precisely the kind of hypothesizing that is proscribed when mounting a facial attack on a statute's constitutionality. (*Zuckerman v. State Bd. of Chiropractic Examiners, supra,* 29 Cal.4th at pp. 38–39; *Pacific Legal Foundation v. Brown, supra,* 29 Cal.3d at p. 180.)

## II

### STAY OF ENHANCEMENTS

The trial court stayed the enhancements under Penal Code section 667.5, subdivision (b), and Health and Safety Code section 11370.2, subdivision (a). We solicited letter briefs from the parties on the issue of whether the stays were authorized by law. The trial court exceeded its jurisdiction in staying the enhancements. (*People v. Meloney* (2003) 30 Cal.4th 1145, 1155–1156 [135 Cal.Rptr.2d 602, 70 P.3d 1023]; *People v. Bradley* (1998) 64 Cal.App.4th 386, 390–392 [75 Cal.Rptr.2d 244].) The orders staying the enhancements must be reversed, and the cause is remanded to the trial court for a new sentencing. At that hearing, the trial court shall either impose the enhancements or strike them in accordance with the dictates of Penal Code section 1385. We express no opinion as to how the trial court should exercise its discretion in sentencing defendant.

## DISPOSITION

That portion of the judgment staying imposition of punishment for the enhancements under Penal Code section 667.5, subdivision (b), and Health and Safety Code section 11370.2, subdivision (a), is reversed. The trial court is directed to hold a new sentencing hearing and either impose the enhancements or strike them in accordance with the dictates of Penal Code section 1385. In all other respects, the judgment is affirmed.

Turner, P. J., and Armstrong, J., concurred.