Filed 3/3/16

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF BELLFLOWER et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>MICHAEL COHEN, as Director, etc., et al.,<br><br>        Defendants and Respondents. | C075832<br><br>(Super. Ct. No.<br>34-2012-80001269-CU-WM-GDS) |
| LEAGUE OF CALIFORNIA CITIES et al.,<br><br>        Plaintiffs and Respondents,<br><br>    v.<br><br>MICHAEL COHEN, as Director, etc., et al.,<br><br>        Defendants and Appellants;<br><br>COUNTY OF SOLANO,<br><br>        Real Party in Interest and Appellant;<br><br>COUNTY OF SANTA CLARA et al.,<br><br>        Interveners and Appellants. | C076075<br><br>(Super. Ct. No.<br>34-2012-80001275-CU-WM-GDS) |

1

APPEALS from judgments of the Superior Court of Sacramento County, Timothy M. Frawley, Judge (Super. Ct. Sacramento County case No. 34-2012-80001269-CU-WM-GDS) and Michael P. Kenny, Judge (Super. Ct. Sacramento County case No. 34-2012-80001275-CU-WM-GDS). Case No. 34-2012-80001269-CU-WM-GDS (case No. C075832) is reversed and remanded with directions. Case No. 34-2012-80001275-CU-WM-GDS (case No. C076075) is affirmed.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Holly O. Whatley, Matthew T. Summers, for Plaintiffs and Appellants in case No. C075832.

Kamala D. Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Constance L. LeLouis, Ryan Marcroft, and Seth E. Goldstein, Deputy Attorneys General, for Defendant and Respondent, Michael Cohen, as Director of the Department of Finance, in case No. C075832.

Orry P. Korp, County Counsel, Danny Y. Chou, Assistant County Counsel, Christopher R. Cheleden and Ling Y. Lew, Deputy County Counsel, for the County of Santa Clara, the County of Santa Clara Auditor-Controller, and the Santa Clara Unified School District as Amicus Curiae on behalf of Defendants and Respondents in case No. C075832.

Kamala D. Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Constance L. LeLouis and Seth E. Goldstein, Deputy Attorneys General, for Defendant and Appellant, Michael Cohen, as Director of the Department of Finance, in case No. C076075.

Dennis Bunting, County Counsel, Azniv Darbinian, Assistant County Counsel, and Daniel Wolk, Deputy County Counsel, for Defendant and Appellant, Simona Padilla-Scholten, as Auditor-Controller of the County of Solano, and Real Party in Interest and Appellant, County of Solano, in case No. C076075.

Orry P. Korp, County Counsel, Danny Y. Chou, Assistant County Counsel, Lizanne Reynolds, Christopher R. Cheleden, and Ling Y. Lew, Deputy County Counsel, for Interveners and Appellants in case No. C076075.

Best Best & Krieger, Iris P. Yang, T. Brent Hawkins, Harriet A. Steiner, and Ann Taylor Schwing, for Plaintiffs and Respondents in case No. C076075.

Under the redevelopment dissolution law, the Legislature directed that a dissolved redevelopment agency's funds not needed to meet enforceable obligations must be turned over to the county's auditor-controller for distribution to local taxing entities. After the

2

California Supreme Court found that dissolving the redevelopment agencies was an appropriate exercise of the Legislature's constitutional power, the Legislature enacted Assembly Bill No. 1484 providing what to do if the successor agency or sponsoring agency of the former redevelopment agency did not turn over those funds to the county's auditor-controller. One method of enforcing the turnover is for the Board of Equalization to withhold sales and use tax revenues to which the sponsoring agency is entitled, and another is for the county auditor-controller to withhold property tax revenues to which the sponsoring agency is entitled.

These two cases, consolidated for oral argument and decision, present a facial constitutional challenge: whether the statute allowing withholding of sales and use tax revenues and property tax revenues violates Proposition 22 (2010), which prohibits the state from reallocating, transferring, or otherwise using revenues from taxes imposed or levied by a local government solely for the local government's purposes. We conclude that the statutes are unconstitutional to the extent they allow the state to reallocate, transfer, or otherwise use tax revenue belonging to the local government.

BACKGROUND

*The Law on Facial Constitutional Challenges*

This is a facial challenge, not an as applied challenge, to the constitutionality of a statute. Therefore, we consider only the text of the statute and not its application to any particular circumstance. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)

The test a court must apply in a facial challenge is unclear, as two different tests have been employed. Under the stricter test, we uphold the statute unless it conflicts with the Constitution in all circumstances. Under the more lenient test, we uphold the statute unless it conflicts with the Constitution in most circumstances. Under either test, the party challenging the constitutionality of the statute bears a heavy burden and cannot prevail simply by suggesting a hypothetical in which the application of the statute would

3

be unconstitutional.  (*Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 39.)

In this case, it does not matter which test is applied because the relevant statute violates Proposition 22 under either test.  We therefore apply the stricter test – whether the challenged statute conflicts with the Constitution in all circumstances.

*The Parties*

Under the Community Redevelopment Law, cities and other local government entities could sponsor redevelopment agencies.  When the Legislature dissolved those redevelopment agencies, many of the *sponsoring agencies*, such as the plaintiffs in this case, provided for the governance of the *successor agencies*, and thus were responsible for winding down the former redevelopment agency, paying enforceable obligations, and remitting unencumbered balances to the county auditor-controller for distribution to local taxing entities, such as cities, counties, special districts, and school districts.  (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 251 (*Matosantos*).)  Successor agencies and sponsoring agencies are separate public entities, even though the sponsoring agency may provide for the governance of successor agency.  (Health & Saf. Code, § 34173, subd. (g).)

The plaintiffs in these two cases are cities, both in their municipal capacity and as successor agencies of the former redevelopment agencies that they sponsored, joined by the League of California Cities, which is an association of more than 400 California Cities.  Since it is unnecessary to differentiate among the plaintiffs in this opinion, we refer to them collectively as the Cities.

The principal defendant in these two cases is the State Director of Finance.  Other defendants and interveners are the State Board of Equalization, the State Controller, and

various local government entities. We refer to these parties collectively as the State, even though some are local governmental entities, unless more specificity is required.[1]

*The Dispute*

Adopted by the voters as Proposition 22 in 2010, article XIII, section 24, subdivision (b) of the California Constitution limits the power of the Legislature: "The Legislature may not reallocate, transfer, borrow, appropriate, restrict the use of, or otherwise use the proceeds of any tax imposed or levied by a local government solely for the local government's purposes." We refer to this provision as "Proposition 22," even though we recognize that there are other provisions in Proposition 22 that are not applicable to this case.

The Cities challenge Health and Safety Code section 34179.6, subdivision (h), passed as part of Assembly Bill No. 1484 in 2012. (Stats. 2012, ch. 26, § 18.) Specifically, they contend that the statute violates Proposition 22 to the extent the statute allows: (1) the State to withhold from the Cities their shares of sales and use tax revenue

---

[1] In *City of Bellflower v. Cohen* (superior court case No. 34-2012-80001269-CU-WM-GDS), which we refer to in this opinion as the Bellflower case, the plaintiffs included 13 cities in both their municipal capacities and as successor agencies to former redevelopment agencies. The defendants included the State Director of Finance, the State Board of Equalization, and nine county auditor-controllers. The County of Santa Clara filed a brief on appeal as amicus curiae on behalf of the State.

In *League of California Cities v. Cohen* (superior court case No. 34-2012-80001275-CU-WM-GDS) which we refer to in this opinion as the League of Cities case, the plaintiffs included the League of California Cities (with Christopher McKenzie, its executive director) and the City of Vallejo, both in its municipal capacity and as successor agency to the former Vallejo Redevelopment Agency. The defendants included the State Director of Finance, the State Board of Equalization, the State Controller, and the auditor-controller of Solano County. The complaint named as real parties in interest various local taxing entities in Solano County, including schools. Later, the County of Santa Clara and its auditor-controller, as well as the Santa Clara Unified School District, intervened.

and (2) the county auditor-controller to withhold from the Cities their shares of property tax revenues.**2**

*The History*

In 2010, after several years in which the Legislature raided local governments' tax revenue to cover shortages at the state level, California voters passed Proposition 22. That initiative stopped the raids by placing local tax revenues off limits to the Legislature. (Voter Information Guide, Gen. Elec. (Nov. 2, 2010) text of Prop. 22, § 2, p. 99.)

In 2011, the Legislature dissolved redevelopment agencies in California to discontinue the allocation of substantial tax revenues to those agencies. Directing the tax revenues away from redevelopment agencies and to local taxing entities including schools helps the State meet its obligation to fund schools. The California Supreme Court found that dissolving redevelopment agencies was within the Legislature's constitutional power. We need not chronicle the dissolution law but instead refer to the cases that have dealt with other issues arising from redevelopment dissolution. (See, e.g., *Matosantos, supra,* 53 Cal.4th 231; *City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020; *City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488 (*Brentwood*).)

A component of the dissolution law, enacted as Assembly Bill No. 1484 in 2012, requires an accounting of the assets, expenditures, and enforceable obligations of the successor agency and payment of the unobligated balance to the county auditor-controller for distribution to local taxing entities. (§§ 34179.5, 34179.6.) This "due diligence review" requires the successor agency to employ a licensed accountant to (1) determine the assets of the former redevelopment agency transferred (a) to the successor agency, (b)

---

**2**    We refer to the challenged statute as "section 34179.6(h)." Also, unspecified code citations are to the Health and Safety Code.

6

to the sponsoring agency, and (c) to any other public agency or private party, and (2) provide documentation of an enforceable obligation that required each transfer. The unobligated balance of the successor agency's assets is available for distribution to local taxing entities. This unobligated balance includes not only funds retained by the successor agency but also funds that were transferred to another agency or party, including the sponsoring agency, without an enforceable obligation. (§ 34179.5, subd. (c).)

Assembly Bill No. 1484 requires the successor agency to submit the results of the due diligence review to its oversight board and to the Department of Finance for review. (§ 34179.6, subd. (a).) And the statute empowers the Department of Finance to "adjust any amount associated with the determination of the [unobligated balance] based on its analysis and information provided by the successor agency and others." (§ 34179.6, subd. (d).) The successor agency or sponsoring agency may request to "meet and confer" with the Department of Finance if the agency disagrees with the department's determination, but there is no other remedy provided in the statute if the department does not change its determination. (§ 34179.6, subd. (e).)

Assembly Bill No. 1484 requires the successor agency, within five working days after the determination of the Department of Finance, to transfer the unobligated balance to the county auditor-controller for distribution to local taxing entities. (§ 34179.6, subd. (f).) This case deals with some of the remedies provided by Assembly Bill No. 1484 if the *successor agency* fails to transfer some or all of the unobligated balance to the county auditor-controller. The Cities challenge the authority that the Legislature, through Assembly Bill No. 1484, gives to (1) the Department of Finance to direct the State Board of Equalization to withhold or, in the words of the statute, "offset" an allocation of sales

7

and use tax revenue to the *sponsoring agency* or (2) the county auditor-controller to "reduce" the property tax allocation to the *sponsoring agency*.[3]

Two provisions providing for withholding of local tax revenue are at issue here:

First, a sponsoring agency's sales and use tax revenue or property tax revenue can be withheld if the former redevelopment agency or successor agency improperly transferred funds to the sponsoring agency without an enforceable obligation and the money is not returned. (§ 34179.6(h)(1)(A).)[4]

And second, a sponsoring agency's sales and use tax revenue or property tax revenue can be withheld if the successor agency fails to make the due diligence review

---

[3] In both cases, the parties argued whether the State could invoke the tax-withholding provisions of Assembly Bill No. 1484 in what is called the "true-up process," which is similar to the due diligence review process. (§ 34183.5.) The true-up process, however, applied only to a limited time and is no longer at issue because the payments have been made without the State invoking the tax-withholding provisions. League of California Cities comments that "it is undisputed that all True-up Payments have been made and no sales taxes have been withheld for failure to make a True-up Payment." Similarly, in the Bellflower case, the sponsoring agencies all made their true-up payments without any withholding of local tax revenue. The State agrees that no sales or use taxes have been withheld from a local entity for failure to make a true-up payment. Under these circumstances, with no threatened action and the process completed, the facial challenge to the constitutionality of those parts of Assembly Bill No. 1484 relating to the true-up process is moot. (*Boccato v. City of Hermosa Beach* (1984) 158 Cal.App.3d 804, 808.) We therefore consider only the due diligence review process, which is ongoing.

[4] Section 34179.6(h)(1)(A) provides: "If the successor agency cannot promptly recover the funds that have been transferred to another public agency without an enforceable obligation as described in paragraphs (2) and (3) of subdivision (c) of Section 34179.5, the funds may be recovered through an offset of sales and use tax or property tax allocations to the local agency to which the funds were transferred. To recover such funds, the Department of Finance may order the State Board of Equalization to make an offset pursuant to subdivision (a) of Section 34179.8. If the Department of Finance does not order a sales tax offset, the county auditor-controller may reduce the property tax allocations to any local agency in the county that fails to repay funds pursuant to subdivision (c) of Section 34179.8."

payment consistent with the Department of Finance's determination.
(§ 34179.6(h)(1)(C).)[5]

Under either scenario, tax revenue that would have been allocated to the sponsoring agency is, instead, given to the county auditor-controller for distribution to local taxing entities. The Legislature identifies this withholding of local tax revenue as "remedies" for the failure to turn over money owed to local taxing entities under the dissolution law. (§ 34179.6(h).)

In our analysis on appeal, there is no reason to differentiate between Assembly Bill No. 1484's withholding of sales and use tax revenues through the Board of Equalization and the withholding of property tax revenues through the county auditor-controller because each is an unconstitutional reallocation, transfer, or other use of local tax revenue. We therefore refer to the two types of withholding collectively as withholding of local tax revenue.

*Trial Court Decisions*

The two cases on appeal produced conflicting trial court decisions – one holding that section 34179.6(h) does not violate Proposition 22 and the other that the statute violates Proposition 22.[6]

---

[5] Section 34179.6(h)(1)(C) provides: "If the city, county, or city and county that created the former redevelopment agency is also performing the duties of the successor agency, the Department of Finance may order an offset to the distribution provided to the sales and use tax revenue to that agency pursuant to subdivision (a) of Section 34179.8. This offset shall be equal to the amount the successor fails to remit pursuant to subdivision (f). If the Department of Finance does not order a sales tax offset, the county auditor-controller may reduce the property tax allocations of the city, county, or city and county that created the former redevelopment agency pursuant to subdivision (c) of Section 34179.8."

[6] The Cities also challenged section 34179.6(h) on other grounds, including home rule, due process, judicial power, separation of powers, and Proposition 1A (2004). We do not reach those contentions because we conclude that the challenged part of the statute

9

In the Bellflower case, the trial court considered whether Proposition 22 "prohibit[s] withholding property, sales, and use taxes owed to cities and counties . . . ." It found no violation of Proposition 22.[7]

In considering whether withholding tax revenues violated Proposition 22, the Bellflower trial court looked to what it determined was the intent of the voters. It concluded that the intent was to prevent the state from reducing the net amount of tax revenue available to the local governments. This narrow finding of intent permitted the Bellflower trial court to judge the constitutionality of the section 34179.6(h) by whether those provisions reduced tax revenue available to the local governments (in the sense of net loss) rather than whether the provisions allowed the state to transfer local tax revenue away from the local governments.

With this version of the voters' intent in mind, the Bellflower trial court considered two separate circumstances that it deemed legally different – first, withholding taxes from the sponsoring agency when the sponsoring agency wrongfully obtained funds from the former redevelopment agency, and, second, withholding taxes from the sponsoring agency without regard to whether the sponsoring agency wrongfully received funds from the former redevelopment agency.

In the first circumstance (under section 34179.6(h)(1)(A), when the sponsoring agency wrongfully obtains funds from the former redevelopment agency), the court held that withholding of local tax revenue from the sponsoring agency does not violate Proposition 22, under either facial-challenge test. The court wrote:

which allows withholding of local tax revenues from the Cities violates Proposition 22 and therefore cannot be invoked.

[7]     The Bellflower trial court also held that Proposition 22 does not prohibit the state from withholding taxes from the *successor* agency, as opposed to the *sponsoring* agency. That holding is not at issue on appeal. We consider only whether Proposition 22 prohibits the state from withholding taxes from the *sponsoring* agency.

10

"The court is persuaded that if the offset provisions of AB 1484 are applied to [sponsoring agencies] in the manner [the Department of Finance] asserts -- i.e., only when the cities/counties are in receipt of wrongfully-obtained funds -- no violation of Proposition [] 22 will occur. An offset will not reduce local governments' tax proceeds; it will simply restore or recover the wrongfully-obtained funds. This does no violence to the purpose of the initiative[].

"Since section 34179.6(h)(1)(A) allows an offset only when the public agency has received 'improperly' transferred funds from the successor agency, the court is persuaded that this section is facially constitutional. The statute passes muster not only under the strictest test, but also under the more lenient standard."

In the second circumstance (without regard to whether the sponsoring agency wrongfully obtained funds from the former redevelopment agency), the court determined that whether the statute (§ 34179.6(h)(1)(C)) violates Proposition 22 comes down to which facial-challenge test is applied. It further determined that the stricter test applies, thus supporting a conclusion that the statute is not unconstitutional.

According to the Bellflower trial court, under the stricter facial-challenge test, the statute is not facially unconstitutional because there are circumstances in which the statute can be applied without violating Proposition 22 – that is, when the sponsoring agency has wrongfully obtained funds from the former redevelopment agency. Since the statute can be applied constitutionally under some circumstances, the facial challenge is unsuccessful under the stricter test.[8]

On the other hand, the League of Cities trial court found that section 34179.6(h), allowing the state to withhold sales and use taxes from the sponsoring agency, is

---

[8]    The request of the League of California Cities et al., for us to take judicial notice of the Bellflower ruling, is granted.

11

unconstitutional under Proposition 22.  The court did not determine what facial-challenge test applies because it concluded that the statute is unconstitutional under either test.

The League of Cities trial court looked first to the language of Proposition 22 to determine the voters' intent.  It reasoned:  "Looking first at the language of Article XIII, Section 24(b), the Court finds that such language is framed as a complete prohibition against the Legislature taking or using local tax revenues.  Article XIII, Section 24(b) contains no exceptions from this prohibition for any reason."

The League of Cities trial court also found that nothing in the ballot measure contradicts the language of the constitutional provision:  "Looking next to the ballot measure through which Article XIII, Section 24(b) was enacted, Proposition 22 contained an explicit statement of purpose:  'The purpose of this measure is **to conclusively and completely prohibit** state politicians in Sacramento from seizing, diverting, shifting, borrowing, transferring, suspending, or otherwise taking or interfering with revenues that are dedicated to funding services provided by local government or funds dedicated to transportation improvement projects and services.'  [¶]  Nothing in this statement of purpose indicates that the intent of the voters was to permit the taking of local tax revenues for remedial or penalty purposes, even on a limited basis.  Instead, the language of the statement of purpose, particularly the language highlighted above, indicates that the intent of the voters was to enact a total prohibition on the taking of local tax revenues for any reason."  (Bold text in original, fn. omitted.)

The League of Cities trial court found merit in the facial challenge because there appeared no circumstances under which the statute could be constitutionally applied.[9]

---

[9]     The League of Cities trial court did not consider the constitutionality of the part of the statute allowing withholding of property tax revenues.  (§ 34179.6(h)(1)(C).)  However, we must consider the constitutionality here because the Bellflower trial court determined that allowing withholding of property tax does not violate the Constitution.

DISCUSSION

I

*Constitutionality of Local tax Withholding*

Before we turn to the issues presented on appeal, we find it necessary to identify what is actually in play.  We consider only whether withholding local tax revenue from the sponsoring agency under section 34179.6(h) violates Proposition 22 and is therefore prohibited.

The State's introduction in its respondent's brief in the Bellflower case betrays the State's argumentative overreach with respect to the issues the trial courts decided and that we must review on appeal.  The State writes that the Cities, as sponsoring agencies, "challenge any aspect of AB 1484 that holds them monetarily responsible for their failure to comply with the law.  Given that the Supreme Court has upheld the dissolution of all redevelopment agencies in the state, it is absurd that [the sponsoring agencies] continue to insist that they can resist dissolution."  To the contrary, the Cities, in a focused argument, claim that withholding of local tax revenue under Assembly Bill No. 1484 is unconstitutional.  They make no argument with respect to other means the State may use to implement and enforce the dissolution law.

The State's overreach continues as it characterizes the Cities' argument as being that "the Legislature cannot provide for a remedy when [the sponsoring agencies] do not remit monies that were either sent to them in error or are otherwise required to be released."  But the State knows that the sponsoring agencies' argument is that the Legislature cannot provide an *unconstitutional* remedy, not that it cannot provide *any* remedy.

While the State's briefing gets more specific and to the point later on, these introductory arguments seem to signal desperation on the State's part and inspire a feeling that the State knows its efforts to defend the challenged statute are in jeopardy.

13

Similarly, intervener and amicus curiae County of Santa Clara argues that Proposition 22 "[does] not give [sponsoring agencies] license to loot their [former redevelopment agencies] with impunity." Again, this case is not about whether the sponsoring agencies are entitled to the funds held; instead, it is only about whether the State can withhold local tax revenue.

Having made that observation, we turn to the constitutional argument.

When we interpret a statutory or constitutional provision adopted by initiative, our overriding charge is to effectuate the voters' intent in adopting the provision. To determine the intent, we begin with the provision's language because it is the best indicator of the voters' intent, and, if there is no ambiguity, we give effect to the plain meaning of the provision. If the text is ambiguous, we also consider the provision's context within the statutory or constitutional scheme. (*Matosantos, supra*, 53 Cal.4th at p. 265; *Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 244; see also *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764.)

As relevant to this case, the language of Proposition 22 provides that the Legislature "may not reallocate, transfer, borrow, appropriate, restrict the use of, or otherwise use the proceeds of any tax imposed or levied by a local government solely for the local government's purposes." (Cal. Const., art. XIII, § 24, subd. (b).) The statute at issue here, section 34179.6(h), violates this constitutional limitation. There is no dispute that the sales, use, and property taxes are "levied by [the] local government solely for the local government's purposes." The statute allows the State to take that revenue away. At the very least, the tax revenue belonging to the local government is "reallocate[ed], transfer[red], . . .or otherwise us[ed]" in the language of Proposition 22, taking it away from the local government to be given to other taxing entities.

The State cites the California Supreme Court's discussion of Proposition 22 in *Matsosantos* as if that discussion, rather than the text of the initiative, represents the

14

entirety of the voters' intent and is the only basis on which Proposition 22 can be applied. To the contrary, *Matosantos* did not address the issues we must decide, and "cases are not authority for propositions not considered." (*Fricker v. Uddo & Taormina Co.* (1957) 48 Cal.2d 696, 701.)

The *Matosantos* court wrote: "Proposition 22 was drafted with the specific intent of ending further [educational revenue augmentation fund] shifts of the sort previously imposed on the agencies, and restricting the state's ability to demand back, for schools or other state purposes, a percentage of the money county auditors allocated to redevelopment agencies." (*Matosantos, supra,* 53 Cal.4th at p. 266.) Nothing in this description of the voters' intent precludes a literal interpretation of the plain language of Proposition 22, even if the State is not shifting revenues to the Educational Revenue Augmentation Fund.

The conclusion of the League of Cities trial court, with which we agree, was that the "language [of Proposition 22] is framed as a complete prohibition against the Legislature taking or using local tax revenues." But the Bellflower trial court deviated from this straightforward, plain-meaning approach because it perceived that the literal language was inconsistent with the voters' intent. We therefore turn to the Supreme Court's guidance on interpreting constitutional provisions consistent with voters' intent. The court has declined to apply the plain meaning only when either (1) it would frustrate the " 'manifest purposes' " of the provision or (2) it would lead to absurd results. (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 376.) Here, neither reason to disregard the plain meaning of the constitutional provision applies.

Holding that Proposition 22 prohibits the reallocation, transfer, or other use of local tax revenue under section 34179.6(h) does not frustrate the manifest purpose of Proposition 22. The Bellflower trial court disagreed and reasoned as follows:

"Based on the language used, the ballot summary, and the argument and analysis presented to the voters, the purpose of Proposition 1A is to protect local government

15

funding and ensure that existing local tax dollars will continue to be available for local purposes by (1) prohibiting the State from shifting local tax revenues to schools or other state-funded agencies, and (2) placing strict limits on the State's ability to alter the allocation of tax revenues among local governments.

"The purpose of Proposition 22 is similar: to restrict the State's ability to temporarily borrow or redirect tax revenues dedicated for transportation and local government services as part of the State's budget solution."

"In sum, the principal purpose of both initiatives is to prohibit the State from reducing existing local tax revenues."

We see two problems with this analysis. First, the language of Proposition 22 is not limited to a prohibition on reducing the net local funds. Instead, it is a prohibition on transferring away from the local government any tax revenue to which the local government is entitled. Nothing cited by the Bellflower trial court or the State supports the limited intent perceived by the Bellflower trial court. And second, even if the main purpose of Proposition 22 is to prohibit the State from reducing a local government's net funds, enforcing the plain meaning of Proposition 22 and preventing the State from withholding local tax revenue, thus allowing the local government to retain, at least temporarily, the funds it may be required to turn over for distribution to other tax entities, does not frustrate that limited purpose of Proposition 22. Therefore, even assuming the Bellflower trial court was correct about the purpose behind Proposition 22, enforcing the plain meaning of Proposition 22 does not frustrate that purpose.

But the voters' intent in passing Proposition 22 was not as narrow as the Bellflower trial court surmised. In addition to the broad language used in the constitutional provision, the stated purpose of the initiative, contained in the language of the initiative, was "to conclusively and completely prohibit state politicians in Sacramento from seizing, diverting, shifting, borrowing, transferring, suspending, or otherwise taking or interfering with revenues that are dedicated to funding services

16

provided by local government . . . ." (Voter Information Guide, *supra*, text of Prop. 22, § 2.5, p. 100.)

Enforcing the plain meaning of Proposition 22 also does not lead to an absurd result. Withholding the tax revenue to which the sponsoring agency is entitled is not the only means by which the State can acquire from the sponsoring agency the funds that should be distributed to other taxing entities, if such a result is justified. For example, the State is authorized to obtain judicial relief for violation of the dissolution law. (§ 34177, subd. (a)(2).)[10]

The State asserts that prohibiting withholding of local tax revenue will force the State to resort to other remedies that are costly or take too much time. However, the State cites no authority for the proposition that the Constitution is to be applied only if application is not too costly or too time-consuming. We are unaware of any such authority.

Attempting to narrow the issues we consider, the State claims that it will use the sales and use tax withholding only if the sponsoring agency is in possession of funds wrongfully transferred to the sponsoring agency from the former redevelopment agency or successor agency. While this promised self-limitation of the State's power is irrelevant in a facial challenge (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084 [only the text considered in facial challenge]), it is also immaterial here because we hold that any withholding of local tax revenues under the challenged statute violates Proposition 22, even if it is determined that the sponsoring agency is wrongfully holding funds that should be distributed to local taxing entities under the dissolution law.

---

[10]    Section 34177, subdivision (a)(2) provides, in part: "Any taxing entity, the [State Department of Finance], and the [State] Controller shall each have standing to file a judicial action to prevent a violation under this part and to obtain injunctive or other appropriate relief."

17

Withholding local tax revenue simply is not a remedy available to the State for taking funds away from a local government entity because the voters precluded that remedy when they passed Proposition 22. Nothing in the language of the initiative or the purpose of the initiative dictates otherwise.

II

*Arguments in Favor of Constitutionality*

The State and the County of Santa Clara make several arguments in favor of finding that withholding local tax revenue under Assembly Bill No. 1484 does not violate Proposition 22. We consider each of them but find that the arguments are without merit.

A.      *The Sponsoring Agency Wrongfully Possesses the Funds*

The State argues that withholding of local tax revenue under section 34179.6(h) is permissible under Proposition 22 if the sponsoring agency is in wrongful possession of funds improperly transferred from the former redevelopment agency or successor agency to the sponsoring agency. This is merely an argument that the end justifies the means; however, there is no legal basis for it. The voters have prohibited the means (withholding local tax revenues), so the means cannot be employed, even if the end (obtaining funds that the sponsoring agency wrongfully possesses) is valid.

Continuing in this vein, the State and County of Santa Clara argue that the sponsoring agency is not legally entitled to the local tax revenue because the sponsoring agency is already wrongfully in possession of funds from the former redevelopment agency or successor agency. This argument is also flawed. Proposition 22 broadly prohibits reallocating, transferring, or otherwise using local tax revenue. If the Legislature can take away local tax revenue any time it declares that funds are wrongfully possessed by a local government entity, the Legislature could pass any law declaring that funds in the possession of the local government entity are wrongfully possessed and then withhold local tax revenue at will, defying Proposition 22. That is essentially what the State is trying to do in this case: declare that a sponsoring agency's funds received from

18

the former redevelopment agency or successor agency are wrongfully possessed then use that declaration to withhold local tax revenues. No valid interpretation of Proposition 22 allows this circumvention of the voters' prohibition of withholding of local tax revenue.

B.    *Withholding Local Tax Revenue is a Penalty*

The State argues that withholding local tax revenue does not violate Proposition 22 because the withholding is a penalty for wrongfully possessing the funds. This argument fails at two points. First, the withholding of local tax revenues is not a penalty at all; instead, it is a remedy, a method for obtaining from the sponsoring agency those funds that the State has determined must be distributed to local taxing entities. And second, even if local tax withholding were a penalty, Proposition 22 contains no exception for penalties.

The State cites *San Diego County v. Milotz* (1956) 46 Cal.2d 761 for the proposition that withholding local tax revenues is a penalty. In that case, the court held that the term "penalty" is expansive and includes " 'a sum of money made payable by way of punishment for the nonperformance of an act or for the performance of an unlawful act, and which, in the former case, stands in lieu of the act to be performed.' [Citations.]" (*Id*. at p. 766.) But even under this expansive definition, withholding of local tax revenue is not a penalty because it is not a sum of money made payable as a punishment. It is not even a sum of money. It is a way to obtain a sum of money. That is a remedy, as the statute declares. "If a successor agency fails to remit to the county auditor-controller the sums identified . . . by the deadline specified . . . , the following remedies are available . . . ." (§ 34179.6(h).)

We need not return in detail to the language of Proposition 22. But we observe that, even if withholding of local tax revenue could be considered a penalty, there is no exception in the text of Proposition 22, neither is there any indication that the voters intended to allow withholding local tax revenue as a penalty when they adopted Proposition 22. Calling withholding of local tax revenue a penalty does not take away

19

from the fact that it is achieved by reallocating, transferring, or otherwise using local tax revenues.

C.    *Proposition 22 must be Harmonized with Other Constitutional Provisions*

County of Santa Clara and associated appellants contend that, when harmonized with other provisions of the California Constitution, Proposition 22 does not prohibit the withholding of local tax revenue in Assembly Bill No. 1484.  To the contrary, interpreting the Constitution as County of Santa Clara suggests would render Proposition 22 meaningless, not harmonize it, which result would be contrary to the People's authority to limit the Legislature's authority.

County of Santa Clara notes that the California Constitution gives the Legislature plenary legislative authority (Cal. Const., art. IV, § 1) and specific authority over redevelopment (Cal. Const., art. XVI, § 16; *Matosantos, supra,* 53 Cal.4th at p. 260). The Constitution also authorizes the Legislature to "prescribe procedures for presentation, consideration, and enforcement of claims against counties, cities, their officers, agents, or employees."  (Cal. Const., art. XI, § 12.)

Citing these provisions, County of Santa Clara concludes that the Legislature has authority "to recover illegally misappropriated assets" in a way that is "narrowly tailored to recover no more than those [redevelopment agency] funds that community sponsors wrongfully obtained, and willfully refuse to return."  This argument is merely a restating of the argument that Proposition 22 does not apply here because (1) the Cities are not legally entitled to the funds and (2) the end justifies the means.  As noted above, that argument is without merit.

The California Constitution is a construct of the People of California.  The preamble of the Constitution declares:  "We, the People of the State of California, grateful to Almighty God for our freedom, in order to secure and perpetuate its blessings, do establish this Constitution."  The Constitution is amendable by initiative.  (Cal. Const., art. II, § 8.)  And the People "have the right to alter or reform [government] when the

20

public good may require." (Cal. Const., art. II, § 1.)  The People give, and the People take away.

In passing Proposition 22, the People took away from the Legislature the authority to withhold sales and use tax revenue and property tax revenue from local governments. Therefore, Proposition 22 can and must be viewed as a limitation on the authority of the Legislature, consistent with the People's authority to amend the Constitution.  The Legislature exceeded its authority under the Constitution when it enacted section 34179.6(h) to the extent the provision permits withholding of local sales and use tax revenue and property tax revenue from local governments.

## DISPOSITION

In the Bellflower case (superior court case No. 34-2012-80001269-CU-WM-GDS), the judgment is reversed and remanded for further proceedings consistent with this opinion.

In the League of Cities case (superior court case No. 34-2012-80001275-CU-WM-GDS), the judgment is affirmed.

The appellants in the Bellflower case and the respondents in the League of Cities case are awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                     　　　　NICHOLSON          , J.


We concur:


       RAYE            , P. J.


       BUTZ            , J.


21