Filed 6/14/17

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| CITY OF BIG BEAR LAKE et al., | C076576 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2013-80001504-CU-WM-GDS) |
| v. | |
| MICHAEL COHEN, as Director, etc., et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Allen Sumner, Judge. Affirmed as modified.

Best Best & Krieger, Iris P. Yang and Irene S. Zurko for Plaintiffs and Appellants.

Kamala D. Harris and Xavier Becerra, Attorneys General, Douglas J. Woods, Senior Assistant Attorney General, Marc A. LeForestier and Nancy J. Doig, Deputy Attorneys General, for Defendants and Respondents.


After the Legislature passed the bill to freeze redevelopment activities and eventually dissolve redevelopment agencies but before Governor Brown signed it into law (Assem. Bill No. 26 (2011-2012 1st Ex. Sess.) enacted as Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 5 (Assembly Bill 1X 26)), City of Big Bear Lake entered into what it

1

called a Cooperation Agreement with its soon-to-be-dissolved redevelopment agency. Under the Cooperation Agreement, City of Big Bear Lake agreed to complete several projects in the city and the former redevelopment agency agreed to pay for the projects. On the same day, City of Big Bear Lake (not the former redevelopment agency) entered into two contracts with private companies for services related to the projects. The next day, Governor Brown signed the Dissolution Law, and it became effective immediately. (*Id.* at § 16.) On the same day Governor Brown signed the law, the former redevelopment agency entered into a contract with a private company for services related to another project listed in the Cooperation Agreement. Eventually, the former redevelopment agency transferred $2.6 million to City of Big Bear Lake to fund the contracts mentioned.

The Dissolution Law[1] (Assembly Bill 1X 26) immediately froze redevelopment (taking from redevelopment agencies the authority to create new enforceable obligations) and provided that only existing enforceable obligations of the former redevelopment agency could be paid from the funds held by the redevelopment agency and from future tax increment revenue. The law provided that any excess after payment of enforceable obligations would be distributed to local taxing entities. Later legislation (Assembly Bill 1484) declared that certain agreements between local municipal governments and their sponsored redevelopment agencies, such as the Cooperation Agreement here, are not enforceable obligations.

In this case, we determine, consistent with the trial court: (1) the contested transactions did not create enforceable obligations of the former redevelopment agency, (2) the Dissolution Law's invalidation of sponsor agreements (agreements between a city

---

[1] We refer to the original law dissolving redevelopment agencies (Assembly Bill 1X 26) as well as later legislation on the subject (Assem. Bill No. 1484 (2011-2012 Reg. Sess.) enacted as Stats. 2012, ch. 26, § 6 (Assembly Bill 1484)) as the Dissolution Law.

2

and its former redevelopment agency) does not violate the California Constitution, and (3) it is irrelevant that City of Big Bear Lake claims it no longer possesses the funds it received from the former redevelopment agency.  We also conclude, consistent with our decision in *City of Bellflower v. Cohen* (2016) 245 Cal.App.4th 438 (*Bellflower*), that the statutory remedy of offsetting City of Big Bear Lake's sales, use, and property taxes to capture the $2.6 million is unconstitutional.  Therefore, we modify the trial court's judgment to the extent it found the proposed sales, use, and property tax offsets constitutional.  And we affirm the judgment as modified.

## BACKGROUND

The Dissolution Law directed redevelopment agencies to continue making payments on enforceable obligations (Health & Saf. Code, § 34169, subd. (a))[2] but prohibited those agencies from incurring additional obligations, freezing all such activities (§ 34162, subd. (a)).  A primary goal of the Dissolution Law was "to preserve, to the maximum extent possible, the revenues and assets of redevelopment agencies so that those assets and revenues that are not needed to pay for enforceable obligations may be used by local governments to fund core governmental services including police and fire protection services and schools."  (§ 34167, subd. (a).)  The Legislature expressed the desire "that redevelopment agencies take no actions that would further deplete the corpus of the agencies' funds regardless of their original source."[3]  (*Ibid.*)

On June 27, 2011, the day before the Dissolution Law was signed by Governor Brown and became effective, City of Big Bear Lake and its former redevelopment agency, knowing about the imminent change of law and the Legislature's intent, signed

---

[2]    Hereafter, unspecified code citations are to the Health and Safety Code.

[3]    For a summary of the Dissolution Law, see *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231 (*Matosantos*) and *City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 494 (*Brentwood*).

3

the Cooperation Agreement. The agreement stated that the former redevelopment agency "desires to transfer that certain amount of redevelopment tax increment funds, and the Bond Proceeds secured with redevelopment tax increment funds . . . to the City, and the City desires to accept such funds for the City to acquire land and construct and install certain public improvements within the Project Areas." Under the terms of the Cooperation Agreement, the former redevelopment agency agreed to transfer to City of Big Bear Lake $23.5 million and the city agreed to undertake specified public improvements.

Also on June 27, 2011, City of Big Bear Lake entered into an agreement with Matich Corporation for street and drainage improvements for about $2.5 million. The city also had a 2006 agreement with Wireless Consulting – Joseph A. Cylwik (also referred to as Cylwik Property Management) to provide engineering services on an as-needed basis. Under this contract, Cylwik Property Management provided services related to the Matich Corporation project.

On June 28, 2011, the day the Dissolution Law and its freeze on the activities of redevelopment agencies took effect, the former redevelopment agency entered into an agreement with RRM Design Group for professional services related to several projects. The former redevelopment agency agreed to pay RRM Design Group about $900,000.

The Dissolution Law required redevelopment agencies to prepare an Enforceable Obligation Payment Schedule (EOPS) listing all of *its own* enforceable obligations. (§ 34169, subds. (g) & (h).) As required by the Dissolution Law, the former redevelopment agency prepared its EOPS, listing its enforceable obligations. The EOPS included City of Big Bear Lake's contracts with Matich Corporation and Cylwik Property Management and the former redevelopment agency's contract with RRM Design Group. But the EOPS did not list the Cooperation Agreement; nor did it reflect that the former redevelopment agency would be transferring $2.6 million to City of Big Bear Lake for payment on the listed contracts. Department of Finance (DOF) reviewed the EOPS and

4

requested documentation on the Matich Corporation contract, but DOF did not return the EOPS to the former redevelopment agency for reconsideration as allowed by the Dissolution Law. (§ 34169, subd. (i).)

Before the former redevelopment agency was dissolved by operation of law on February 1, 2012 (*Matosantos, supra,* 53 Cal.4th at p. 275), the former redevelopment agency paid to City of Big Bear Lake $2.6 million and the city paid the money to Matich Corporation, Cylwik Property Management, and RRM Design Group.

When the former redevelopment agency was dissolved, City of Big Bear Lake became the successor agency to wind down the affairs of the former redevelopment agency.

After the California Supreme Court decided *Matosantos* upholding the constitutionality of the Dissolution Law, the Legislature passed and the Governor signed Assembly Bill 1484, which required an audit of successor agencies to determine whether unobligated tax increment revenues were available for transfer to taxing entities. (See Assem. Bill No. 1484 (2011-2012 Reg. Sess.) adding Stats. 2012, ch. 26, §§ 17, 40.) This "due diligence review" or DDR (§ 34179.5, subd. (a)) identified "[t]he dollar value of assets and cash . . . transferred after January 1, 2011, through June 30, 2012, by the redevelopment agency or the successor agency to [a sponsoring entity] and the purpose of each transfer." (§ 34179.5, subd. (c)(2).) The amendment to the Dissolution Law required the successor agency to submit the results of this audit to the successor agency's oversight board (§34179.6, subd. (c)) and to DOF, which had the authority to adjust any amounts in the DDR (§ 34179.6, subd. (d)).

Crucial to this case, Assembly Bill 1484 also modified the definition of "enforceable obligations" to *exclude* all agreements between a former redevelopment agency and its sponsoring entity (sponsor agreements), with exceptions not relevant to this appeal. (§ 34171, subd. (d)(2).)

5

As required by the Dissolution Law, City of Big Bear Lake, acting as the successor agency, obtained a DDR, which listed transfers from the former redevelopment agency to City of Big Bear Lake. Included in that list was $2,629,622 for "[r]eimbursement to City [of Big Bear Lake] for street capital project expenses."

After review of City of Big Bear Lake's DDR, DOF adjusted the amount available for distribution to local taxing entities to include the money paid by the former redevelopment agency to the city under the Cooperation Agreement for work performed by Matich Corporation, Cylwik Property Management, and RRM Design Group. (§ 34171, subd. (d)(2).)

DOF met and conferred with City of Big Bear Lake but reiterated its position that the $2.6 million "was transferred in accordance with an agreement between the City and the [former redevelopment agency]." DOF informed City of Big Bear Lake in a letter that, if the city did not comply within 30 days, DOF would direct the Board of Equalization to withhold sales and use tax from the city. In response, City of Big Bear Lake informed DOF that it was not in possession of those funds.

City of Big Bear Lake, both in its municipal capacity and as successor agency of the former redevelopment agency, sought a writ of mandate and declaratory relief against DOF and others. As relevant to this appeal, City of Big Bear Lake challenged DOF's determinations that the Cooperation Agreement and the contracts with Matich Corporation, Cylwik Property Management, and RRM Design Group did not result in enforceable obligations. City of Big Bear Lake also sought a declaration that the proposed offset of its sales, use, and property taxes was unconstitutional.

The trial court entered judgment in favor of DOF and the other defendants. The trial court determined:

- The Matich Corporation and Cylwik Property Management contracts were not enforceable obligations of the former redevelopment agency because those

6

contracts were made between City of Big Bear Lake and those private contractors and did not involve the former redevelopment agency.

- The contract between RRM Design Group and the former redevelopment agency is void because it was entered into after the Dissolution Law freeze went into effect.

- The Cooperation Agreement is not an enforceable obligation of the former redevelopment agency because it is a sponsor agreement.

- The fact that all payments were made under the Cooperation Agreement before it was rendered unenforceable by Assembly Bill 1484 is not dispositive.

- City of Big Bear Lake cannot claim that DOF approved the payments made under the Cooperation Agreement to City of Big Bear Lake as part of the EOPS because City of Big Bear Lake did not list the Cooperation Agreement in the EOPS.

- DOF's determinations in this case do not violate Proposition 22 because City of Big Bear Lake did not disclose the Cooperation Agreement in its EOPS.

- The Dissolution Law does not violate the contracts clauses of the United States and California Constitutions.

- DOF correctly determined that City of Big Bear Lake failed to transfer $2.6 million for distribution to local taxing entities.

- The validity of the enforcements provisions of the Dissolution Law, allowing the state to withhold sales, use, and property taxes, is not ripe for review because the funds are no longer in the possession of the City of Big Bear Lake.

DISCUSSION

Before we turn to City of Big Bear Lake's arguments on appeal, it is helpful to step back and look at the four agreements at issue in this case: (1) the city's contract with Matich Corporation, (2) the city's contract with Cylwik Property Management, (3) the former redevelopment agency's contract with RRM Design Group, and (4) the Cooperation Agreement between the city and the former redevelopment agency. Very

7

simply, none of these contracts supports an enforceable obligation on the part of the former redevelopment agency.

First and second, the former redevelopment agency was not a party to the Matich Corporation and Cylwik Property Management contracts. Therefore, those contracts did not create an enforceable obligation on the part of the former redevelopment agency.

Third, the former redevelopment agency's contract with RRM Design Group was void under the Dissolution Law because it was entered into after the freeze took effect. (§ 34162, subd. (b).) Therefore, the contract did not create an enforceable obligation on the part of the redevelopment agency.

And fourth, the Cooperation Agreement was a sponsor agreement (an agreement between the former redevelopment agency and its sponsoring agency). Under Assembly Bill 1484, such agreements are not enforceable (and there is no statutory exception applicable here). (§ 34171, subd. (d)(2).)

Since none of these four contracts creates a current, enforceable obligation on the part of the former redevelopment agency, neither DOF nor the trial court erred in determining that $2.6 million of the funds transferred from the former redevelopment agency to City of Big Bear Lake were not supported by enforceable obligations. Therefore, City of Big Bear Lake must provide $2.6 million for distribution to local taxing entities. (§ 34179.5, subd. (a).)

I

*Enforceable Obligations*

City of Big Bear Lake makes three arguments that the agreements entered into by the former redevelopment agency must be viewed as enforceable obligations of the former redevelopment agency under the Dissolution Law. It argues: (1) any agreement must be viewed as an enforceable obligation if it was enforceable when the transfers of funds were made, (2) the RRM Design Group contract was not affected by the freeze component of the Dissolution Law even though the contract was not signed until the

8

freeze had taken effect, and (3) DOF tacitly approved the transfers by the former redevelopment agency by not objecting to them. None of these arguments has merit.

A. *Enforceability of Agreements that were Enforceable When Funds Transferred*

City of Big Bear Lake contends that the Cooperation Agreement was an enforceable obligation because, at the time the city and former redevelopment agency entered into *and* fulfilled the obligations under the contract, it was an enforceable obligation under the Dissolution Law. The premise of City of Big Bear Lake's argument is that, if the sponsor agreement created an enforceable obligation when it was entered into and executed, the Legislature either did not or cannot reach back and make the obligation unenforceable. For this proposition, City of Big Bear Lake offers no authority. (See *Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1 [plaintiffs' contention in opening brief forfeited for failure to provide authority].) And in any event the premise is false. The Legislature could and did retroactively invalidate sponsor agreements entered into before the Dissolution Law was passed. (See *Brentwood, supra,* 237 Cal.App.4th at pp. 496-500.)

B. *Enforceability of Contract between Former Redevelopment Agency and RRM Design Group*

City of Big Bear Lake also contends that the contract entered into between the former redevelopment agency and RRM Design Group is an enforceable obligation because, even though it was signed on June 28, 2011, the day that the freeze under the Dissolution Law took effect, it was approved by the former redevelopment agency the day before, on June 27, 2011. This contention also fails because the contract was signed after the freeze took effect and therefore it did not create an enforceable obligation.

But City of Big Bear Lake complains that the former redevelopment agency was "bound by the RRM Contract once the [former redevelopment agency's] governing board approved it on June 27, 2011. The actual execution of the contract was a ministerial act

9

. . . ." Even assuming for the purpose of argument that the former redevelopment agency staff had the ministerial duty to sign the contract (which is dubious because it no longer had the authority to do so on June 28, 2011), RRM Design Group was under no such duty and did not sign the contract until June 28, 2011.  In other words, no potentially binding contract existed until RRM Design Group signed it June 28, 2011.  No binding contract existed before the freeze took effect.  The general rule is that a contract is not binding until both parties sign it.  (*Sparks v. Mauk* (1915) 170 Cal. 122, 123.)  We see no reason in this case to deviate from the general rule.  Therefore, since no binding contract (and, hence, no enforceable obligation) existed before the freeze took effect, the freeze prevented the formation of a binding contract.  (§ 34162, subd. (b).)

C.      *Tacit Approval by DOF*

Under the Dissolution Law, the former redevelopment agency was directed to continue to meet its enforceable obligations until it was dissolved.  (§ 34169, subd. (a).)  In connection with this requirement, the Legislature directed the former redevelopment agency to list its enforceable obligations.  (§ 34169, subd. (g).)

The former redevelopment agency listed the contracts with the private contractors in its EOPS (§ 34169, subd. (g)), which it approved on August 22, 2011, reflecting the allegedly enforceable obligations of the former redevelopment agency through December 31, 2011.  While DOF had the statutory authority to return the EOPS to the former redevelopment agency for reconsideration (§ 34169, subd. (i)), it did not.  The EOPS listed the contracts with (1) Matich Corporation, (2) Cylwik Property Management, and (3) RRM Design Group, even though two of the companies (Matich and Cylwik) entered into contracts with the city and not with the former redevelopment agency and the other contract (with RRM Design Group) was void.  (The former redevelopment agency was supposed to list *its own* obligations in the EOPS, not those of the city (§ 34169.))  The former redevelopment agency did not list the sponsor agreement (Cooperation Agreement) in the EOPS.  Before its dissolution, the former redevelopment agency made

10

the transfers listed in the EOPS, including the transfers disputed in this case, to City of Big Bear Lake (not to the contractors).

On appeal, City of Big Bear Lake asserts: "DOF tacitly approved the [former redevelopment agency's] transfers to the City and those transfers were valid." While the city discusses the statutes concerning the EOPS and the duty to pay enforceable obligations, it offers no authority for the proposition that this asserted tacit approval made those alleged obligations enforceable, even though they were not enforceable under the Dissolution Law. Specifically, the transfers to City of Big Bear Lake under the Cooperation Agreement for payments to Matich Corporation, Cylwik Property Management, and RRM Design Group were unenforceable because the payments were made to satisfy a sponsor agreement. Also, the agreement with RRM Design Group was not an enforceable obligation because the contract was signed after the freeze went into effect. These were not enforceable obligations, and "tacit approval" did not turn them into enforceable obligations.[4]

II

*Proposition 22*

City of Big Bear Lake contends that the Dissolution Law violates Proposition 22 (2010), which generally prohibits the state from redirecting a redevelopment agency's tax increment revenue. (Cal. Const., art. XIII, § 25.5, subd. (a)(7).)[5] The city argues that the

_____

[4]     City of Big Bear Lake does not assert that DOF is equitably estopped from determining that the Cooperation Agreement was not an enforceable obligation. We therefore do not discuss that issue.

[5]     The constitutional provision on which City of Big Bear Lake relies prohibits the state from "[r]equir[ing] a community redevelopment agency (A) to pay, remit, loan, or otherwise transfer, directly or indirectly, taxes on ad valorem real property and tangible personal property allocated to the agency pursuant to Section 16 of Article XVI to or for the benefit of the State, any agency of the State, or any jurisdiction; or (B) to use, restrict,

11

constitutional provision precludes DOF from invalidating payments that were valid when they were made. As noted above, the trial court rejected this argument because the city did not include the Cooperation Agreement in its EOPS. But the city claims it was justified in not listing the Cooperation Agreement because it listed the "ultimate recipients"—Matich Corporation, Cylwik Property Management, and RRM Design Group—in the EOPS. After City of Big Bear Lake filed its opening brief, we held in *Brentwood* that retroactive invalidation of sponsor agreements does not violate Proposition 22.

Before we reach the constitutional issue, we agree with the trial court that City of Big Bear Lake did not preserve this issue of whether the Dissolution Law violates Proposition 22 under the facts of this case because the city did not include the Cooperation Agreement in its EOPS. As the trial court reasoned, "[w]hatever merit[] this argument may have for payments valid[ly] made prior to the [redevelopment agency's] dissolution, the failure to properly disclose the payments on the EOPS invalidated the payments. There is thus no Proposition 22 violation." Listing the "ultimate recipients," as City of Big Bear Lake characterizes it, did not meet the requirement of the statute to list the "enforceable obligations."

In any event, as we held in *Brentwood*, the retroactive invalidation of the payments made under the Cooperation Agreement before the former redevelopment agency was dissolved did not violate Proposition 22, even if the payments were made when the sponsor agreement was enforceable. (*Brentwood, supra,* 237 Cal.App.4th at pp. 496-500.)

City of Big Bear Lake claims that *Brentwood* is distinguishable. It argues: "Here, all of the payments were made under the Cooperation Agreement during the 'freeze'

or assign a particular purpose for such taxes for the benefit of the State, any agency of the State, or any jurisdiction . . . ." (Cal. Const., art. XIII, § 25.5, subd. (a)(7).)

period, and were listed on the [former redevelopment agency's] EOPS, which DOF did not disapprove." We need not pause long on this argument that *Brentwood* is distinguishable because it is based on an unpersuasive argument concerning the facts. Here, the disputed payments were not made to the outside contractors listed on the EOPS; instead, the payments were made to City of Big Bear Lake under the Cooperation Agreement, which was not disclosed on the EOPS. There is no merit or reason to City of Big Bear Lake's argument that it was sufficient to list the contracts with the outside contractors in the EOPS because those contracts did not create enforceable obligations on the part of the former redevelopment agency, which is borne out by the fact that the former redevelopment agency made payments to the city, not to those outside contractors. Since the foundation of City of Big Bear Lake's attempt to distinguish *Brentwood* is unsupportable, we need not undertake a further comparison of the two cases.

## III

### *Possession of Funds*

City of Big Bear Lake contends that, because the city has already spent the money received from the former redevelopment agency, there are no "unobligated balances available for transfer to taxing entities." (§ 34179.5, subd. (a).) We see no relevance to this argument. It does not justify City of Big Bear Lake's refusal to turn over funds that must be turned over under the Dissolution Law.

Section 34179.5, subdivision (a) directs "each successor agency [to] employ a licensed accountant, approved by the county auditor-controller and with experience and expertise in local government accounting, to conduct a due diligence review to determine the unobligated balances available for transfer to taxing entities." This provision does not require the licensed accountant to determine (1) whether City of Big Bear Lake has spent the money received from the former redevelopment agency or (2) what is in City of Big Bear Lake's coffers; instead, it requires the licensed accountant to apply the Dissolution Law, analyze the transactions, and do the math to determine how much money the city

13

must turn over. Section 34179.5 provides the process, but it does not require the licensed accountant to determine whether the city possesses the funds. City of Big Bear Lake establishes neither by the language of the statute nor by any other authority that it cannot be ordered to turn over funds for distribution to taxing entities just because it has already spent the money it received from the former redevelopment agency.

To reiterate, the former redevelopment agency had no obligation with respect to the Matich Corporation, Cylwik Property Management, and RRM Design Group contracts. Therefore, the fact that City of Big Bear Lake paid on those contracts cannot be attributed to any obligation of the former redevelopment agency.

City of Big Bear Lake argues that it cannot recover the funds from the private companies that received payment for their services. Again, the city does not explain how this is relevant to the inquiry required by section 34179.5.

City of Big Bear Lake's argument that it no longer possesses the funds received from the former redevelopment agency does not justify refusal to turn over $2.6 million for distribution to taxing entities under the Dissolution Law.

IV

*Sales, Use, and Property Tax Offsets*

In its correspondence with City of Big Bear Lake, DOF stated that it, if the city did not turn over funds identified by DOF to be distributed to taxing entities, then the state would capture those funds by offsetting sales, use, and property tax revenues to which the city was entitled.[6] (§ 34179.6, subd. (h).) The trial court concluded that the issue was not ripe for review. City of Big Bear Lake raises the issue again on appeal. Since

---

[6]    We recognize that the trial court declined to address this issue, opining that it was not ripe for review. Since we have directly addressed this issue in *Bellflower* and since the state notified City of Big Bear Lake, at least initially, that it would invoke that remedy, we address it here.

14

briefing was completed on this case, we decided *Bellflower, supra,* 245 Cal.App.4th 438, in which we held that the proposed offsets under section 34179.6, subdivision (h) would violate Proposition 22 (2010).  We therefore must modify the trial court's judgment.

DISPOSITION

The judgment is modified to prohibit the state from using the remedies in section 34179.6, subdivision (h) to capture funds by offsetting sales, use, or property taxes to which City of Big Bear Lake is entitled.  With that modification, the judgment is affirmed.  DOF is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                        NICHOLSON            , J.



We concur:



        BLEASE           , Acting P. J.



        ROBIE           , J.

15