Filed 11/3/20  Ruben v. Friedman CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHARLES E. RUBEN,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>NATHANIEL J. FRIEDMAN,<br><br>        Defendant, Cross-complainant and Appellant. | B300392<br>(c/w B305624)<br><br>(Los Angeles County Super. Ct.<br>No. BC649012) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Maureen Duffy-Lewis, Judge.  Affirmed.

Nathaniel J. Friedman, in pro. per., for Defendant, Cross-complainant and Appellant.

Schindler Eyrich, John F. Eyrich; Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, Kenneth C. Feldman and Patrik Johannson for Plaintiff, Cross-defendant and Respondent.

_____

Appellant Nathaniel J. Friedman (Friedman) appeals a judgment awarding Charles E. Ruben (Ruben) contract damages, interest and costs after a jury found that Friedman failed to pay for Ruben's legal services.  Friedman contends that the judgment must be reversed because:  (1) Ruben's contract was void and unenforceable, (2) he was not entitled to quantum meruit recovery in the alternative, and (3) the trial court erred when it granted summary judgment on the cross-complaint against Ruben for legal malpractice.  In a consolidated appeal, Friedman contends that the trial court's award of attorney fees to Ruben must be reversed if the judgment is reversed.  We find no error and affirm in all respects.

## FACTS

### The Complaint

Ruben sued Friedman for breach of contract, account stated, services rendered and quantum meruit, alleging:  Friedman retained Ruben to provide legal services with respect to a pending foreclosure against Friedman's house in Beverly Hills.  Though Ruben provided legal services as agreed, Friedman refused to pay his legal fees.

The parties' contract, which was attached to the complaint, stated that Ruben would:  (1) file a complaint against Nationstar Mortgage, I.LC. (Nationstar), to obtain a temporary restraining order and preliminary injunction to stop the foreclosure sale set for April 14, 2016, on Friedman's residence; (2) seek a temporary restraining order and preliminary injunction by ex parte application; and (3) file a complaint against Nationstar for, inter alia, unlawful business practices in violation of Business and Professions Code section 17200, wrongful foreclosure, intentional infliction of emotional distress, negligent infliction of emotional

distress, breach of contract, breach of the covenant of good faith and fair dealing, and common counts. Per the contract, Ruben's hourly rate was $400 and Friedman agreed to pay his bills monthly.

**The Cross-Complaint**

Friedman sued Ruben for legal malpractice, alleging he hired Ruben for representation in an action against Nationstar and that Ruben breached his duty of care by: failing to determine the exact amount Friedman owed Nationstar; failing to obtain a copy of 12 Code of Federal Regulations, part 1024, a regulation that gives a borrower a regulatory basis for demanding that a lender provide the specific amount owed on a loan; and failing to obtain a preliminary injunction. The cross-complaint alleged that Ruben's breaches caused Friedman to pay Nationstar $125,000 he did not owe.

**Summary Judgment on the Cross-Complaint**

Ruben moved for summary judgment on the cross-complaint and argued that Friedman could not establish that he suffered damages.

The motion averred that Friedman filed a state action against Nationstar in March 2015 alleging, inter alia, that it wrongfully demanded that he deposit money into an impound account to pay for taxes and insurance. The state court granted summary judgment for Nationstar, concluding that Friedman entered a loan modification agreement in which he agreed to fund an impound account for taxes and insurance, he refused to make sufficient payments to the impound account, he breached the loan modification agreement, and there were no triable issues regarding Friedman's claims. The judgment was affirmed on appeal.

At that point, Friedman hired Ruben.  He filed a federal action on behalf of Friedman alleging Nationstar had not given Friedman credit for the property insurance and property taxes that he had paid directly.  At the time, Nationstar had refunded $94,392.83 to Friedman, including $14,242.79 for property taxes and $3,624 for property insurance.  After Nationstar prevailed on a motion to dismiss, Ruben filed a first amended complaint adding a cause of action for financial elder abuse.  At some point, the federal court enjoined Nationstar from foreclosing on Friedman's house.  Subsequently, Nationstar attended a hearing at which it presented a detailed transaction history of Friedman's account indicating that he currently owed $124,410.44.  Friedman paid that sum and his loan was reinstated.  The first amended complaint was later dismissed with leave to amend.  On September 21, 2016, Ruben substituted out of the federal action.  Friedman, representing himself, filed a second amended complaint in the federal action that contained the same causes of action as the first amended complaint but added allegations that he paid $124,410.44 due to Nationstar's undue influence and the threat that he would lose his house.  He sought the return of the $124,410.44.  The following month, Nationstar moved to dismiss the second amended complaint and the federal court granted the motion with prejudice.

In his papers, Ruben argued that the state and federal action involved the same primary right, and that the federal action was barred by res judicata.  Next, he argued that he e-mailed Friedman the exact amount Nationstar claimed was due and therefore did not breach a duty to determine that amount.  In addition, Ruben argued he did not cause Friedman damage by failing to obtain a preliminary injunction because Ruben's efforts

prevented foreclosure on Friedman's residence. Finally, Ruben claimed that Friedman was unable to prove he did not owe Nationstar $125,000 and was damaged by having to pay that sum.

In opposition, Friedman argued that the motion for summary judgment should be denied because Ruben failed to offer declarations establishing that he met the standard of care and did not cause damage. Friedman also argued that the state action was not res judicata.

The trial court ruled as follows: "It is undisputed that the State Court, the Federal Court and the State Appellate Court have all determined that Friedman violated the Modification Agreement. It is undisputed that the Moving Party Ruben was successful in preventing foreclosure. The summary judgment in the State action acted as a bar to the Federal Action under res judicata. It is undisputed that Friedman obtained a specific amount of money owed. [¶] Therefore, the Motion for Summary Judgment is Granted."

## Trial on the Complaint; the Special Verdict; Judgment

### *Opening Arguments*

In his opening argument, counsel for Ruben argued that the case was a simple one: Friedman hired Ruben for legal services, Ruben performed those legal services, and then Friedman refused to pay the agreed fees.

Friedman's attorney, in contrast, argued that the retainer agreement was an illegal contract because Ruben illegally charged upfront fees.

### *Testimony Regarding Nonpayment of Fees*

Ruben testified that he was retained by Friedman to stop the foreclosure on his residence. Friedman paid Ruben $5,000 on

one occasion, $10,000 on another, and $2,238.81 on yet another. Ruben stopped representing Friedman on September 22, 2016, and he refused to pay Ruben's final bill of $153,620.11.

*Testimony Regarding the Scope of Ruben's Services and the Legality of the Retainer Agreement*

Ruben testified that when he met Friedman in March 2016, Friedman did not ask Ruben to obtain a loan modification or loan forbearance. Afterwards, Ruben prepared a retainer agreement that stated the scope of engagement. Ruben asserted that the retainer agreement accurately reflected all the promises he made.

Friedman, who was cocounsel for the defense with another attorney, cross-examined Ruben and asked if he was familiar with Civil Code sections 2944.7[1] and 2944.8 when he first represented Friedman. Ruben said that he had not been familiar with them.

Friedman quoted section 2944.7 to Ruben as establishing that a person who performs either mortgage loan modification or mortgage loan forbearance services cannot collect a fee until after the person has fully performed every service he or she agreed to perform.

When Friedman testified, he stated that he did not think he specifically asked Ruben to perform a loan modification. However, Friedman said he asked Ruben "to do something. Call Nationstar, see what [he] could do to get these people to move, which in my mind I guess is a loan modification." Friedman also testified, "I don't think I ever used the words 'loan modification,'

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

6

but that was my clear intent. Why else would I have him contact Nationstar. . . . ?"

*The Special Verdict*

A special verdict form was submitted to the jury. In question No. 1, the jury was asked whether Ruben and Friedman entered a contract for legal services. It answered yes. Question No. 2 asked: "Did [Friedman] prove that in the retainer agreement . . . Ruben agreed to negotiate, attempt to negotiate, arrange, attempt to arrange, or otherwise offer to perform a mortgage loan modification or other form of mortgage loan forbearance for a fee or other compensation paid by [Friedman]?" The jury answered no. Because the answer was no, the jury skipped ahead to question No. 7 and concluded that Friedman breached the contract. Last, the jury concluded that the total amount of contract damages to be awarded to Ruben was $148,564.11.

When the jury found a breach of contract and that Ruben did not contract to provide mortgage loan modification or mortgage loan forbearance services, it skipped the questions asking it to determine whether the retainer agreement was enforceable or whether Ruben was entitled to the reasonable value of his services.

*Judgment*

The trial court entered judgment awarding Ruben $148,546.11 in damages, $38,708.08 in prejudgment interest, and costs to be determined.

Friedman appealed.

*Award of Attorney Fees; Amended Judgment*

Based on a memorandum of costs and a motion for attorney fees filed by Ruben, the trial court awarded Ruben $17,345.26 in

7

costs and $215,115 in attorney fees. The trial court entered an amended judgment to reflect the addition of these amounts to the original award of damages and interest.

Friedman filed his second appeal.

## DISCUSSION

## I. Enforceability of the Retainer Agreement.

A contract is unenforceable if it is contrary to the law. (*Sheppard Mullin, Richter & Hampton, LLC v. J-M Manufacturing Co, Inc.* (2018) 6 Cal.5th 59, 73.) Friedman argues that the retainer agreement is void and therefore unenforceable because Ruben violated sections 2944.6, 2944.7, and 2944.8 by receiving compensation before completing his legal services. Friedman contends that this is a matter of statutory interpretation.[2]

Theoretically, we would engage in de novo review. (*Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, 619.) But Friedman does not argue that the trial court misinterpreted the statutory scheme. Ruben informs us that Friedman successfully asked the trial court to allow the jury to decide whether the retainer agreement was void based on section 2944.7. We cannot verify this because the record is incomplete. Although it indicates that Friedman submitted jury instructions on this topic, it does not indicate whether they were given. The inference, however, is that the instructions were given because the special verdict form asked the jury to determine whether Ruben violated section

---

[2] Ruben contends that Friedman is challenging the jury's findings, and that the standard of review is the substantial evidence test. But at no point in his briefs does Friedman suggest the evidence was insufficient.

8

2944.7 and whether, as a result, the retainer agreement was unenforceable. In the reply, Friedman suggests that the trial court erred when it gave the issue to the jury. We conclude any error was invited because the jury decided the case based on instructions and a special verdict form Friedman either requested or accepted without objection. (*Newton v. Thomas* (1955) 137 Cal.App.2d 748, 763.)

This could end our analysis. To be complete, we explain why Friedman's urged statutory interpretation lacks merit.

Section 2944.6, subdivision (a) provides that when a person negotiates, attempts to negotiate, arranges, attempts to arrange, or otherwise offers to perform a mortgage loan modification or form of mortgage loan forbearance for a fee or other compensation paid by the borrower, that person shall provide the borrower a separate statement notifying him or her, inter alia, that "[i]t is not necessary to pay a third party to arrange for a loan modification or other form of forbearance from your mortgage lender or servicer. You may call your lender directly to ask for a change in your loan terms." (§ 2944.6, subd. (a).)

Section 2944.7, subdivision (a) provides that it is unlawful for a person providing such services to demand or receive compensation until every service promised has been performed. Next, section 2944.8 provides that if a person violates section 2944.7, and if the victim is a senior citizen or a person with a disability, the violator is subject to a $2,500 civil penalty for each transgression.

In his opening brief, Friedman contends that *In the Matter of Taylor* (Review Dept. 2012) 5 Cal. State Bar Ct. Rptr. 221 (*Taylor*) establishes that the statutory scheme applies to this case. We note that though State Bar opinions are not binding,

they constitute persuasive authority. (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1113.)

In *Taylor*, the State Bar alleged that an attorney violated section 2944.7 by collecting preperformance fees and violated section 2944.6 by failing to provide borrowers with the requisite notice. (*Taylor*, *supra*, 5 Cal. State Bar Ct. Rptr. at pp. *21–22.) When reviewing the findings of a lower tribunal, the State Bar Court found that the attorney provided loan modification services based on the following facts. Two of his agreements were titled "Loan Modification Retainer." (*Id*. at pp. *23–24.) While the other agreements were titled "Legal Services Retainer," the introductory e-mails to the clients introduced the law firm as a loan modification service provider, and the agreements stated that the fees being charged included items which were part of loan modifications.

*Taylor* stands for the unremarkable proposition that the statutes apply when an attorney contracts to provide loan modification services. It did not consider whether the statutory scheme applies when an attorney contracts to pursue litigation with the goal of forestalling foreclosure and obtaining damages on various theories. Cases are not authority for propositions that went unconsidered. (*City of Bellflower v. Cohen* (2016) 245 Cal.App.4th 438, 452.)

Aside from his citation to *Taylor*, Friedman's opening brief is full of incoherent ramblings in which he implies that any attorney who contracts to represent a borrower in litigation to forestall a foreclosure and obtain damages is providing mortgage loan modification or mortgage loan forbearance services. But he has not offered any statutory interpretation on the matter. His position "is strongly reminiscent of those magazine puzzles of

yesteryear where the reader was challenged to 'guess what is wrong with this picture.'" (*People v. Dougherty* (1982) 138 Cal.App.3d 278, 280.)

In his reply brief, Friedman cites section 3528, which provides: "The law respects form less than substance." He goes on to suggest that Ruben's legal services are equivalent to mortgage loan modification services. But Friedman has not backstopped his assertion with analysis. "'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]'" (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)

Absent a showing of error, we must presume Ruben's retainer agreement was enforceable. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

## II.  Quantum Meruit.

"[I]n a case of a contract to pay for services which is void as against public policy, there arises an implied contract to pay for services rendered thereunder, and the remedy of action sounding in quantum meruit is available to recover the reasonable value thereof." (*Wiley v. Silsbee* (1934) 1 Cal.App.2d 520, 522.)  If the retainer agreement is void, Friedman urges us to conclude that Ruben is barred from seeking the reasonable value of his services on remand.  This issue is moot because Friedman has not shown that the retainer agreement is void.

## III.  Summary Judgment.

Friedman's challenges to the trial court's summary judgment ruling fail because the record is inadequate for review. It does not contain, inter alia, Ruben's separate statement, his compendium of exhibits, or the declarations of Ruben and Patrik

11

Johannson.  Where, as here, the record is inadequate for review, the trial court's decision must be affirmed by default.  (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)

## IV.  Attorney Fees.

Friedman requests reversal of the attorney fees award if we conclude that the retainer agreement was void.  Because we have determined that the retainer agreement was enforceable, we must affirm the attorney fees award.

All other issues are moot.

**DISPOSITION**

We affirm the judgment.  Ruben is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT